LEWIS v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

DIONNE v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket Nos. 74127, 72940. Argued February 6, 1986 (Calendar Nos. 1,
2). Decided September 17, 1986.

Jessie Lewis brought an action in the Wayne Circuit Court
against the Detroit Automobile Inter-Insurance Exchange, seek-
ing no-fault benefits for injuries suffered when, while a pedes-
trian, he was struck by an automobile driven by the defen-
dant's insured. The court, Harold M. Ryan, J., entered judg-
ment on a jury verdict for the plaintiff and denied the defen-
dant's motion for accelerated judgment on the basis of the one-
year-back rule. The Court of Appeals, WAHLS, P.J., and BRON-
SON and N. J. KAUFMAN, JJ., affirmed in an unpublished opin-
ion per curiam and certified that its decision was in conflict
with that of another panel (Docket No. 67686). The defendant
appeals.

Lester R. Dionne brought an action in the Wayne Circuit Court
against the Detroit Automobile Inter-Insurance Exchange for
no-fault benefits for injuries suffered when his motorcycle,
insured by the defendant, collided with an automobile. The
court, John M. Wise, J., granted the defendant's motion for
accelerated judgment on the ground that the plaintiff failed to
file suit within one year of the date of the accident. The Court
of Appeals, J. H. GILLIS, P.J., and GRIBBS and GAGE, JJ., af-
firmed in an unpublished memorandum opinion (Docket No.
64006). The plaintiff appeals.

In an opinion by Chief Justice WILLIAMS, joined by Justices

REFERENCES
Am Jur 2d, Insurance § 1876 et seq.
When statute of limitations commences to run on automobile no-
fault insurance personal injury claim. 36 ALR4th 357.
Limitation of action against insurer for breach of contract to
defend. 96 ALR3d 1193.
Insurer's failure to pay amount of admitted liability as precluding
reliance on statute of limitations. 41 ALR3d 1111.

LEVIN, CAVANAGH, BOYLE, and ARCHER, the Supreme Court *held:*

The one-year limit on bringing an action for recovery of personal protection insurance benefits is tolled from the date a claimant makes a specific claim for benefits to the date the insurer formally denies liability, provided the claimant pursues the claim with reasonable diligence.

1. Under the no-fault act, an action for recovery of personal protection insurance benefits may not be commenced later than one year after the date of the accident. However, tolling the one-year limitation from the date a specific claim for benefits is made to the date liability is formally denied, where the claimant has sought reimbursement with reasonable diligence, preserves the legislative purpose of preventing stale claims and encouraging prompt denials of claims. Failure to permit tolling would require a claimant to file suit as the one-year deadline approached, regardless of the status of the claim, resulting in needless litigation.

2. In *Lewis,* the record shows that the plaintiff pursued his claim with reasonable diligence. In addition, the trial court did not err in permitting the plaintiff to present witnesses even though he had failed to file a witness list as required by local court rule because the witnesses called by the plaintiff were listed on the defendant's witness list, and the defendant does not claim surprise or prejudice. Finally, the jury's award was supported by the testimony presented.

3. In *Dionne,* the case must be remanded to the trial court for reconsideration of the defendant's motion for accelerated judgment.

*Lewis,* affirmed.

*Dionne,* reversed and remanded.

Justice BRICKLEY, joined by Justice RILEY, dissenting, stated that § 3145 of the no-fault act plainly and unambiguously provides that a person may not recover personal protection benefits for any portion of a loss incurred more than one year prior to the commencement of a suit. Absent ambiguous language or constitutional infirmity, the judiciary should not substitute policy for explicit directives of the Legislature, especially when, as in this case, a provision is clear and not necessarily inconsistent with other purposes and sections of the act.

### OPINION OF THE COURT

1. INSURANCE — NO-FAULT — LIMITATION OF ACTIONS — TOLLING.

The one-year limit on bringing an action for recovery of personal

protection insurance benefits is tolled from the date a claimant makes a specific claim for benefits to the date the insurer formally denies liability, provided the claimant pursues the claim with reasonable diligence (MCL 500.3145; MSA 24.13145).

DISSENTING OPINION BY BRICKLEY, J.

2. INSURANCE — NO-FAULT — LIMITATION OF ACTIONS.
   *A person who brings an action to recover personal protection benefits may not recover benefits for any portion of the loss incurred more than one year prior to the commencement of the suit (MCL 500.3145[1]; MSA 24.13145[1]).*

*David J. Franks* and *Rader, Eisenberg & Feldman, P.C.* (by *Merrill Gordon*), for plaintiff Lewis.

*Robert A. Canner & Associates, P.C.* (by *Robert A. Canner*), and *Daniel P. Feinberg* for plaintiff Dionne.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Mary Catherine Rentz* and *Kenneth M. Mattson*) for the defendant in *Lewis*.

*Dickinson, Brandt, Hanlon, Becker & Lanctot* (by *James H. Schoolmaster*); (*MacArthur, Cheatham, Acker & Smith, P.C.*, by *James G. Gross*, of counsel) for the defendant in *Dionne*.

WILLIAMS, C.J. In this opinion we consider the question whether the "one year back" limit on recovery of no-fault insurance benefits contained in MCL 500.3145(1); MSA 24.13145(1) should be tolled from the date a claimant makes a specific claim for benefits to the date the insurer formally denies liability, provided the claimant pursues the claim with reasonable diligence. We hold that such tolling best reflects the purposes of the no-fault statute.

I. FACTS *LEWIS*

On November 13, 1978, Jessie Lewis, a pedes-

trian, was struck by an automobile driven by Larry Perkins and insured by defendant Detroit Automobile Inter-Insurance Exchange. The plaintiff's guardian, Hattie Shaw, contacted the defendant regarding plaintiff's medical expenses. Because the accident report listed Ms. Shaw's residence at 16151 Whitcomb as the plaintiff's address, the defendant told her to contact her own insurer for payment.[1] On March 10, 1979, Mr. Lewis' attorney notified the defendant that his client would be making a claim for benefits under the no-fault act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.* On March 15, 1979, the defendant, noting the plaintiff's statement of residence on Whitcomb, replied by letter, stating, "At this point it does not appear we will be in a position to afford PIP benefits to Mr. Lewis."[2] On May 5, 1979, plaintiff's attorney submitted to defendant an affidavit regarding his residence at the time of the accident.[3] On May 8, 1979, defendant mailed plaintiff's attorney an application for benefits and requested an additional affidavit stating plaintiff's residence at the time of the accident. Defendant also inquired as to the names of other household members and

[1] Mr. Lewis had apparently given conflicting information regarding his address, listing his sister's home on Whitcomb as his mailing address, but claiming to have been living with a friend at the time of the accident. If the plaintiff had been living with his sister, her no-fault policy would have covered his injuries. MCL 500.3114; MSA 24.13114. Mr. Lewis was not personally insured.

[2] In its brief, defendant claims to have formally denied plaintiff's claim by this letter. Plaintiff points out that the statement in the letter is equivocal and conflicts with the trial testimony of defendant's employee, Colleen Campbell, who stated that defendant had never denied plaintiff's claim. Plaintiff also notes that negotiations regarding plaintiff's claim continued after the letter was mailed. We need not decide whether the statement in the letter could be regarded as a formal denial, because defendant did not claim before the trial court or the Court of Appeals that it had formally denied plaintiff's claim. This issue may thus be regarded as waived.

[3] This affidavit was mentioned in testimony, but is not a part of the record.

as to Mr. Lewis' employment. On June 11, 1979, Lewis' attorney returned the application for benefits which listed "medical bills to date" of $3,186.[4]

On June 19, 1979, defendant's agent telephoned plaintiff's attorney, requesting further medical reports and the name of the insurer of automobiles at the Whitcomb address. In September and October, defendant responded to inquiries from the hospital by stating that it was awaiting necessary information from plaintiff's attorney. On November 14, 1979, plaintiff's attorney wrote defendant, asking if the claim was going to be paid. The letter stated that plaintiff had complied with all defendant's requests and asked, if defendant was going to deny benefits, that the denial and the reasons therefor be in writing. On November 19, 1979, defendant responded by letter, stating, "The file has been reviewed by my supervisor, concerning possible payment. He has requested the name of the insurers of the autos housed at the Whitcomb street address." On January 23, 1980, plaintiff submitted to defendant an affidavit stating that his residence at the time of the accident was 15887 Robson.

On February 22, 1980, plaintiff filed suit. The Department of Social Services intervened as plaintiff to recoup amounts paid pursuant to Medicaid. MCL 400.106; MSA 16.490(16). The defendant's motion for accelerated judgment based on the one-year-back rule was denied. The jury returned a verdict for plaintiff of $27,120.70.

The Court of Appeals affirmed and certified, pursuant to Administrative Order No. 1984-2, that its decision in this case conflicted with the holding

---

[4] Corrine Lenard, supervisor of receivables for Mount Carmel Mercy Hospital, testified at the trial that Mr. Lewis' total hospital bill was $26,753.20. She stated that the Department of Social Services paid $23,460.70, the patient paid $106.50, and the remaining $3,186 was outstanding.

of another panel in *Kransz v Meredith,* 123 Mich
App 454; 322 NW2d 571 (1983). By order of June
24, 1985, this Court granted leave to appeal. 422
Mich 930.

## II. FACTS *DIONNE*

Plaintiff Lester Dionne was injured on July 9,
1975, when his motorcycle, insured by defendant
DAIIE, collided with an automobile. The accident
occurred on the premises of plaintiff's employer.
Mr. Dionne's attorney notified defendant of the
accident on July 2, 1976. On July 8, 1976, plain-
tiff's attorney submitted a number of medical bills
in connection with the claim. On October 16, 1976,
defendant mailed plaintiff's attorney a number of
forms which were completed and returned on Jan-
uary 6, 1977. On March 31, 1977, defendant wrote
to plaintiff's attorney requesting further informa-
tion regarding the claim. Plaintiff's attorney did
not respond. Over a year later, on July 7, 1978,
plaintiff filed suit in Wayne Circuit Court. The
court granted accelerated judgment to the defen-
dant on the basis of the one-year-back rule. The
Court of Appeals affirmed. We first held this case
in abeyance pending decision in *Welton v Carriers
Ins Co,* 421 Mich 571; 365 NW2d 170 (1984). By
order of June 24, 1985, we granted leave to appeal.
422 Mich 929.

## III. DISCUSSION

In *Tom Thomas Organization, Inc v Reliance Ins
Co,* 396 Mich 588; 242 NW2d 396 (1976), this Court
considered a provision in an insurance contract
which limited the time for bringing suit on the
policy to twelve months after loss or discovery of
loss. We held there that the period of limitation

was tolled from the time the insured gave notice of loss until formal denial of the claim. In *In re Certified Question: Ford Motor Co v Lumbermens Mutual Casualty Co,* 413 Mich 22; 319 NW2d 320 (1982), we applied a similar tolling concept to the limitation provision of a statutory fire insurance policy.

The Court of Appeals, in *Richards v American Fellowship Mutual Ins Co,* 84 Mich App 629; 270 NW2d 670 (1978), lv den 406 Mich 862 (1979), applied the *Tom Thomas* rationale to the one-year-back rule contained in § 3145 of the no-fault act. The *Richards* panel held that the one-year limitation was tolled from the time the insured provided notice of loss until a formal denial of liability. Other panels of the Court of Appeals have declined to follow *Richards,* resulting in conflicting lines of authority in that Court. Compare *Lansing General Hospital v Gomez,* 114 Mich App 814; 319 NW2d 683 (1982), and *Joiner v Michigan Mutual Ins Co,* 137 Mich App 464; 357 NW2d 875 (1984) (following *Richards*) with *Aldrich v Auto-Owners Ins Co,* 106 Mich App 83; 307 NW2d 736 (1981), *Allstate Ins Co v Frankenmuth Mutual Ins Co,* 111 Mich App 617; 314 NW2d 711 (1981), *English v Home Ins Co,* 112 Mich App 468; 316 NW2d 463 (1982), and *Kransz v Meredith, supra.*

In *Welton v Carriers Ins Co, supra,* this Court considered a case in which the plaintiff was injured in a work-related motor vehicle accident in which the defendant insurance company was both the no-fault and the workers' compensation carrier. The plaintiff urged this Court to adopt the *Richards* analysis tolling the § 3145 one-year-back rule. We declined to reach the *Richards* question, however, because of our holding that the plaintiff's notice to the defendant insurance company of his workers' compensation claim was not sufficient to

trigger tolling of his no-fault claim, even assuming the validity of the *Richards* tolling principle. The *Welton* opinion stated that, if such tolling were adopted, it would begin only when a claim for specific benefits was submitted to the insurer. In a footnote, the Court recognized that *Tom Thomas* and *Ford* permitted tolling as of the date of notice. The Court reasoned that "the peculiar nature of the statutory no-fault limitation provision" justified a more strictly tailored rule.

First, the fire insurance limitation provision operates as an absolute bar to suits not brought within one year of discovery (or inception) of the loss. Absent a tolling rule, the fact that either an insured has promptly notified the insurer of the loss or the insurer has already partially paid the claim would have no effect on that bar. With no-fault, the statute has a built-in "tolling" permitting later suit once notice is given or partial payment been made. Thus, the consequences of the one-year cutoff, and the corresponding need for relief by tolling as of the date notice is given, is more drastic in the case of fire insurance actions than with no-fault.

Second, the specified procedure for claim and recovery of fire insurance benefits includes greater built-in delays, shortening the insured's already limited time to sue, than does the no-fault law. Following a covered fire loss, the insured generally has 60 to 90 days to file proof of loss, after which the insurer has 60 days to pay or settle the claim. Additional delays may arise when the insurer does not promptly submit proof of loss forms or promptly "accept" the proof of loss once submitted. See *Tom Thomas,* 396 Mich 592-593. The no-fault law simply provides that payment of a claim is overdue if not paid within 30 days after proof of loss is received by the insurer. MCL 500.3142(2); MSA 24.13142(2). Accordingly, the one-year period in which a fire insurance plaintiff may sue is more substantially curtailed by the recovery mechanism

than is the no-fault limitation period, further warranting an earlier tolling date.

Finally, the fact that the Legislature has already provided a tolling provision for commencing a no-fault action, triggered by "notice of injury," suggests both that notice of injury was intended to have no greater effect and that there is less justification for this Court to interfere with the statutory scheme. [*Welton, supra,* 580, n 4.]

We now reach the question that the *Welton* Court reserved and conclude that the one-year-back rule of § 3145 is tolled from the date of a specific claim for benefits to the date of a formal denial of liability. We believe this result effectively preserves the Legislature's purpose. As Justice BOYLE stated in *Welton:*

Tolling the statute when the insured submits a claim for specific benefits would not appear to detract from the policies underlying the one-year limitation on recovery. By submitting a timely and specific claim, the insured serves the interest in preventing stale claims by allowing the insurer to assess its liability while the information supporting the claim is relatively fresh. A prompt denial of the claim would barely affect the running of the limitation period, while a lengthy investigation would simply "freeze" the situation until the claim is eventually denied. In effect, the insured would be charged with the time spent reducing his losses to a claim for specific benefits plus the time spent deciding whether to sue after the claim is denied. [*Id.,* 578-579.]

Most persons are confident that, in the event of a loss, their insurer will pay their claim without the necessity for litigation. It is only when an insurer denies liability that it is unequivocally impressed upon the insured that the extraordinary step of pursuing relief in court must be taken. A

contrary result today would require the prudent claimant to file suit as a precautionary measure when the one-year deadline approached, regardless of the status of the claim. In addition to requiring a level of sophistication many claimants may not possess, such an approach would encourage needless litigation. One of the important reasons behind the enactment of the no-fault system was the reduction of automobile accident litigation. *Cassidy v McGovern,* 415 Mich 483, 501; 330 NW2d 22 (1982).

In addition to the above-cited Michigan insurance cases, there is precedent in the case law for the principle of judicial tolling. In *American Pipe & Construction Co v Utah,* 414 US 538, 559; 94 S Ct 756; 38 L Ed 2d 713 (1974), the United States Supreme Court stated:

> These cases fully support the conclusion that the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose.

See also *Steele v Bliss,* 166 Mich 593; 132 NW 345 (1911). Although the facts in these cases are dissimilar to those of the instant case, they do stand for the proposition that limitation statutes are not entirely inflexible, allowing judicial tolling under certain compelling circumstances.

To the rule enunciated in *Richards,* we add the caveat that the insured must seek reimbursement with reasonable diligence or lose the right to claim the benefit of a tolling of the limitations period. Such a condition should alleviate the defendant's

fear that adoption of the tolling principle will result in "open-ended" liability in cases in which the claimant, having made a specific claim for benefits, thereafter refuses to respond to the carrier's legitimate requests for more information needed to process the claim.

## IV. OTHER ISSUES *LEWIS*

Defendant in *Lewis* raises two other issues for our consideration. DAIIE argues that the jury's verdict must be overturned because of plaintiff's failure to file a witness list as required by Wayne Circuit Court Rule 301.3(d). On the first day of trial, the court denied defendant's motion to bar the plaintiff from presenting testimony because of the failure to comply with this rule. The witnesses called by plaintiff were all listed on defendant's witness list. Defendant does not claim to have been surprised or prejudiced by plaintiff's admitted neglect, and we can perceive no error in the trial court's decision to allow the plaintiff to proceed.

Finally, the defendant argues that the jury should have reduced its award because $23,460.70 of plaintiff's debt was discharged by a Medicaid payment of $18,940. We first note that the figure of $18,940 was not presented to the jury. Walter Stacey, director of reimbursement for the Mount Carmel Mercy Hospital, testified that although $23,460.70 of Mr. Lewis' bill was discharged through the Medicaid program, Medicaid did not pay individual accounts, but reimbursed the hospital for a certain percentage of allowable expenses. Mr. Stacey estimated that where $23,000 was recognized as a Medicaid-covered expense, the hospital would actually receive "roughly $18,900" from

the Department of Social Services.[5] He also stated that if the hospital were presented with payment of plaintiff's entire obligation of $26,753.20, it would reimburse Medicaid and keep the rest. If, as defendant claims, the jury's award of the entire amount of plaintiff's bill[6] resulted in a windfall for the plaintiff, it was not clearly established at trial. We therefore find that the jury's award was supported by the testimony presented.

### CONCLUSION

In *Lewis,* the record shows that the plaintiff pursued his claim with reasonable diligence. We therefore affirm the decision of the Court of Appeals. In *Dionne,* we reverse the decision of the Court of Appeals and remand the case to the Wayne Circuit Court for reconsideration of defendant's motion for accelerated judgment under the standard announced in this case.

LEVIN, CAVANAGH, BOYLE, and ARCHER, JJ., concurred with WILLIAMS, C.J.

BRICKLEY, J. (*dissenting*). Because the plain and unambiguous language of MCL 500.3145(1); MSA 24.13145(1) is contrary to the conclusion of the majority, I respectfully dissent. Although the majority may further one of the broad purposes of the no-fault act—avoiding litigation—this judicial amendment of a clear legislative directive will have a pernicious long-term effect. Unless statu-

---

[5] Defendant's brief in this Court states, "The exact amount paid by Medicaid is $18,940, as shown by the attached letter of Bernard Rosner, dated September 1, 1982." Defendant does not further identify Mr. Rosner, and no such letter is attached. In any event, a party may not enlarge the record on appeal. *Dora v Lesinski,* 351 Mich 579; 88 NW2d 592 (1958).

[6] The jury actually awarded plaintiff $27,120.70, some $367.50 over the amount of the hospital bill. Defendant does not contest this discrepancy.

tory language is ambiguous or a constitutional mandate compels revision, the well-settled principle of this Court is that "the explicit declaration of the legislature is the law, and the courts must not depart from it." *Becker v Detroit Savings Bank*, 269 Mich 432, 436; 257 NW 853 (1934).

MCL 500.3145; MSA 24.13145 provides:

> (1) An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. *However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.* The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.
>
> (2) An action for recovery of property protection insurance benefits shall not commence later than 1 year after the accident.

Section 3145 is clear in its directive that a claimant cannot recover benefits for losses incurred more than one year prior to the commencement of the suit; not one year plus the period of time between making the claim and the denial of the claim as the majority holds.

The majority amends this statutory directive by use of a three-part response. First, by employing precedent which favors a "practical" reading of the tolling principles; second, basing its decision on perceived paramount purposes of the act rather than the one section in question; and, third, by providing a reasonable-diligence requirement for pursuing reimbursement. However, neither precedent nor the internal provisions of the act can fully support such reasoning.

The majority has explicitly acknowledged that not all panels of the Court of Appeals have accepted the approach advanced in *Richards v American Fellowship Mutual Ins Co,* 84 Mich App 629; 270 NW2d 670 (1978), lv den 406 Mich 862 (1979). Indeed, other panels have recognized the proper judicial role:

> Under *Richards,* therefore, the permissible period of recovery runs, apparently, from one year prior to the commencement of the action only if there is no hiatus between the giving of notice of loss by the insured and the denial of liability by the insurance company. This seems to us contrary to the plain language of the statute and results in impermissible judicial legislation. We believe the statutory language is unambiguous and see no need for departing from the literal interpretation. [*Aldrich v Auto-Owners Ins Co,* 106 Mich App 83, 86; 307 NW2d 736 (1981).]
>
> The Court-imposed tolling period in *Richards* finds no support in the statute. Section 3145(1) is clear and unambiguous and is not subject to interpretation by the Court. We are in agreement with the more recent decisions from panels of this Court which have rejected the *Richards* analysis in favor of a literal reading of § 3145(1). [*Kransz v Meredith,* 123 Mich App 454, 458-459; 332 NW2d 571 (1983).]

See also *English v Home Ins Co,* 112 Mich App

468; 316 NW2d 463 (1982); *Allstate Ins Co v Frankenmuth Mutual Ins Co,* 111 Mich App 617; 314 NW2d 711 (1981). And, even if this Court's recent decision in *Welton v Carriers Ins Co,* 421 Mich 571; 365 NW2d 170 (1984), does in fact imply favoring the *Richards* approach, as the majority suggests, its foundation upon purposes of the act may not supplant explicit legislation, no matter how "progressive" the result may appear.

I think *Welton* casts doubt on the *Richards* approach of reading a tolling provision into the one-year-back rule. As the majority points out, in *Welton* we distinguished our decisions in *The Tom Thomas Organization, Inc v Reliance Ins Co,* 396 Mich 588; 242 NW2d 396 (1976), and *In re Certified Question: Ford Motor Co v Lumbermens Mutual Casualty Co,* 413 Mich 22; 319 NW2d 320 (1982), where we construed a statutory fire insurance policy to include a tolling provision for the period between the filing and rejection of a claim. *Ante,* pp 98-99.

The second attack on the statute is based on policy and consumer expectations. The majority observes that most people expect that insurance companies will pay their claims without having to begin litigation, and that it is only when a claim is formally denied that litigation will be necessary. The majority thus concludes that to follow the statute as written would require a claimant to file a suit as a "precautionary measure" when the one-year deadline approached. Although the majority approach may further the general policy of reducing litigation, the statute is not necessarily inconsistent with other purposes and provisions of the act. For example, §§ 3142 and 3148 impose sanctions upon an insurer for late payments. Thus, § 3145 may be viewed as a complementary provision which "sanctions" an insured who is not

diligent in pursuing a claim. See also *Pendergast v American Fidelity Fire Ins Co,* 118 Mich App 838; 325 NW2d 602 (1982); *Davis v Farmers Ins Group,* 86 Mich App 45; 272 NW2d 334 (1978). This Court was not privy to all of the arguments and purposes presented to the Legislature when it drafted these specific tolling requirements. When statutory language is as clear as it is here, it is outside our province to second-guess the Legislature as to which policy is paramount in regard to § 3145.

The third response by the majority to § 3145 is to add a requirement that a claimant must pursue reimbursement with "reasonable diligence." That is, a claimant cannot simply keep the claim open by not responding to requests for information necessary to resolve the claim. The necessity for this addition demonstrates the fact that this Court has engaged in judicial legislation.

The majority does not suggest that § 3145 contains any ambiguity or that the Legislature was not in full command of what it intended to do. To the contrary, the Legislature was cognizant of a need for some tolling. Again, as we said in *Welton, supra,* and as pointed out by the majority:

> [T]he fact that the Legislature has already provided a tolling provision for commencing a no-fault action, triggered by "notice of injury," suggests both that notice of injury was intended to have no greater effect and that there is less justification for this Court to interfere with the statutory scheme. [*Welton, supra,* 580, n 4.]

Absent ambiguous language or constitutional infirmity, the judiciary should not substitute policy for explicit directives of the Legislature, especially when, as here, the language is clear and not necessarily inconsistent with other purposes and sections of the act.

RILEY, J., concurred with BRICKLEY, J.