GRANT v AAA MICHIGAN/WISCONSIN, INC

Docket No. 249720. Submitted January 11, 2005, at Detroit. Decided June 2, 2005, at 9:00 a.m. Leave to appeal sought.

Jeanine A. Grant brought an action in the Wayne Circuit Court against AAA Michigan/Wisconsin, Inc., her no-fault insurer, seeking additional benefits for attendant care services provided to her by her family after an automobile accident. The plaintiff claimed a violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901, for underpayments to her family caregivers based on an orally represented, but allegedly nonexistent, fee schedule, and a violation of the no-fault act, MCL 500.3101, with the one-year period of limitations in the latter act being tolled because there was no formal rejection of her claim. The defendant argued that MCL 500.3145(1), which establishes a one-year period of limitations for no-fault benefit claims commencing at the formal refusal of the claim, had expired, extinguishing any cause of action and that the MCPA claim was merely another no-fault claim similarly time-barred. The court, Cynthia D. Stephens, J., granted partial summary disposition for the defendant, ruling that the limitations period of the no-fault act had expired with respect to the plaintiff's no-fault claim, but that the MCPA claim was not time-barred. The defendant appealed the court's decision allowing the MCPA claim to proceed. The plaintiff cross-appealed the court's grant of partial summary disposition for the defendant of the no-fault claim, contending that the period of limitations had been tolled.

The Court of Appeals *held*:

1. The trial court erred in allowing the MCPA claim to proceed. A court may look behind the technical label that a plaintiff attaches to a cause of action to analyze the substance of the claim asserted; the court need not rely on the superficial language of the complaint while ignoring its substance. The plaintiff is ultimately seeking additional no-fault benefits to which she believes she is entitled and was wrongly deprived. The MCPA claim is time-barred under MCL 500.3145(1), which provides that a claimant may not recover benefits for any portion of a loss incurred more than one year before the date on which the pertinent action is brought. The plaintiff's claims were for losses incurred more than

one year before the filing of the complaint. The claims were time-barred.

2. The trial court properly dismissed the plaintiff's no-fault claim because no tolling of the limitations period occurred. The period of limitations in the no-fault act is tolled from the date of a specific claim for benefits to the date of a formal denial of liability. MCL 500.3145(1). The facts in this case are unique circumstances that demonstrate a specific claim and a formal denial. The plaintiff initially applied for benefits, her husband periodically inquired whether the applicable rate had changed, the defendant orally denied increased benefits, and there was continual payment by the defendant at the lower rate despite continued requests for compensation at a higher rate. In this case, it was clear that additional compensation would not be forthcoming and that litigation would be necessary if the plaintiff were to recover the additional benefits sought.

Affirmed in part and reversed in part.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — LIMITATION OF ACTIONS — TOLLING.

The one year limit on bringing an action for recovery of personal protection insurance benefits is tolled from the date a claimant makes a specific claim for benefits to the date the insurer formally denies liability; a formal denial of liability for additional benefits may consist of actions that make clear that such benefits will not be forthcoming and that litigation will be necessary if the claimant is to recover the additional benefits sought (MCL 500.3145).

*Aho & Potti, LLP* (by *Dale P. Aho*), for the plaintiff.

*Schoolmaster, Hom, Killeen, Siefer, Arene & Hoehn* (by *David R. Tuffley*) (*Gross, Nemeth & Silverman, P.L.C.*, by *James G. Gross*, of counsel) for the defendant.

Before: GAGE, P.J., and METER and FORT HOOD, JJ.

METER, J. Defendant appeals as on leave granted[1] from an order denying in part its motion for summary

---

[1] This Court initially denied defendant's application for leave to appeal, after which the Supreme Court remanded the case to this Court for consideration as on leave granted. See 468 Mich 948 (2003).

disposition in this case involving the no-fault act, MCL 500.3101 *et seq.*, and the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.* Defendant contends that plaintiff's claim brought under the MCPA was, in actuality, based on the no-fault act and was barred by the one-year limitations period found in that act. See MCL 500.3145(1). Defendant argues that the trial court erroneously allowed plaintiff's MCPA claim to proceed. On cross-appeal, plaintiff takes issue with the trial court's treatment of another of her claims—a claim based explicitly on the no-fault act. Plaintiff contends that the trial court erroneously dismissed this claim for being untimely even though the applicable limitations period had been tolled.[2] We conclude that plaintiff's MCPA claim was, indeed, subject to the one-year limitations period found in MCL 500.3145(1) and that the trial court erred in allowing the claim to proceed. We additionally conclude that the trial court properly dismissed plaintiff's no-fault claim because no tolling of the limitations period occurred. We affirm with respect to the cross-appeal but reverse with respect to the primary appeal.

### I. BASIC FACTS

In March 1995, plaintiff sustained severe injuries in an automobile accident, leaving her a quadriplegic and dependent on others for basic activities such as eating and bathing. During the first month after plaintiff returned home from the hospital, personnel from an outside agency came to plaintiff's home to provide care for her. Thereafter, plaintiff's husband, Raymond Grant

---

[2] In addition to the two claims discussed in this appeal, plaintiff raised five other claims in the trial court. These five claims were dismissed and are not at issue in this appeal.

(Grant), and his daughters acted as plaintiff's primary caregivers.

In March 1995, plaintiff filed an application for benefits with defendant, her no-fault insurance provider. Grant handled most of the communication with defendant's personnel on plaintiff's behalf. Walter Kay, defendant's claims representative, informed Grant that defendant would pay plaintiff's family members ten dollars an hour for attendant care services. Plaintiff and Grant were aware that defendant had previously compensated the outside agency at a higher rate and inquired about this discrepancy. Kay informed them that ten dollars an hour was the rate that defendant paid family members for attendant care services and that plaintiff's family was not entitled to a higher rate because the family was not an agency. Grant periodically inquired whether the family rate had increased, but he was always told that the rate remained ten dollars an hour. All of Grant's communications with Kay were by telephone, and Grant never requested an increase in compensation in writing. In November 1998, defendant approved an increase in the family rate to eleven dollars an hour, and defendant paid the increased rate until the fall of 1999, when the family incorporated and was paid the agency rate of twenty-two dollars an hour. Grant formed the corporation, R & R Home Care, in order to obtain health insurance at a reasonable rate and for the purpose of providing attendant services to plaintiff.

At the time of plaintiff's and Grant's depositions, defendant was paying twenty-three dollars an hour to R & R Home Care. Plaintiff decided to file a lawsuit seeking back pay for attendant care services after reading an article about a woman who received a $5 million settlement from another insurance company

who had paid the woman a lower rate for attendant care services because professional care workers were not involved. Plaintiff also decided to seek reimbursement from defendant for two vans that Grant purchased after the accident.[3]

## II. NATURE OF THE CLAIMS AND THE TRIAL COURT'S RULINGS

In December 2001, plaintiff filed a complaint seeking back pay for attendant care services as well as reimbursement for the purchase price of the vans. Plaintiff set forth seven legal theories, including the two at issue in this appeal: violation of the MCPA and failure to pay benefits under the no-fault act. With regard to the claim involving the MCPA, plaintiff argued, in part, that defendant's representations regarding the existence of a rate schedule that allowed compensation of only ten dollars an hour for family members were false and constituted an unfair and deceptive practice under the MCPA. Defendant argued, in part, that the claim ultimately sought benefits under the no-fault act and that the one-year limitations period found in MCL 500.3145(1) therefore barred the claim. Defendant contended that plaintiff's MCPA claim was simply a no-fault claim relabeled as an MCPA claim. The trial court ruled that plaintiff had met her burden of showing that defendant's conduct constituted a trade, practice, or custom that confused and misled plaintiff, and it thus denied defendant's motion with respect to the MCPA claim. The trial court specifically ruled that plaintiff's MCPA claim was not barred by a period of limitations.

Plaintiff's claim that was explicitly based on the no-fault act merely sought back pay and compensation

---

[3] Defendant paid for modifying the vans but not for the vans themselves.

that plaintiff contended was payable under that act. In response to this claim, defendant again cited MCL 500.3145(1), which states, in part, that "[a] claimant may not recover benefits for any portion of [a] loss incurred more than 1 year before the date on which the [pertinent] action was commenced." Defendant argued that this statute barred recovery of any no-fault benefits pertaining to expenses incurred more than one year before plaintiff filed her complaint. In response, plaintiff cited Michigan case law and argued, in part, that the one-year period specified in MCL 500.3145(1) had been tolled because plaintiff never received from defendant a formal denial of her claim. The trial court agreed with plaintiff that defendant never formally denied benefits, but it emphasized that plaintiff had accepted defendant's payment of benefits despite knowledge of the higher payment paid to agencies. The court ruled that the purposes of tolling the limitations period would not be served under the circumstances of this case. The court granted summary disposition to defendant with regard to plaintiff's claim.

### III. STANDARD OF REVIEW

Both issues in this appeal involve a summary disposition ruling. This Court reviews de novo a trial court's decision with regard to a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Although defendant did not specify under which subrule of MCR 2.116(C) it sought summary disposition, it is apparent that defendant premised its statute of limitations defenses on MCR 2.116(C)(7). In reviewing a motion for summary disposition brought under MCR 2.116(C)(7), this Court accepts the contents of the complaint as true unless the

moving party contradicts the plaintiff's allegations with documentary evidence. *Pusakulich v Ironwood*, 247 Mich App 80, 82; 635 NW2d 323 (2001). This Court considers affidavits, depositions, admissions, and other documentary evidence when reviewing a motion under MCR 2.116(C)(7), as long as these materials would be admissible as evidence at trial. *Id.*; MCR 2.116(G)(5), (6).

Both issues in this appeal also involve statutory interpretation. We review de novo issues of statutory interpretation. *Burton v Reed City Hosp Corp,* 471 Mich 745; 751; 691 NW2d 424 (2005).

### IV. THE MCPA CLAIM

With regard to plaintiff's MCPA claim, defendant contends that the claim is simply a no-fault claim relabeled as an MCPA claim and that the one-year limitations period contained in the no-fault act therefore applies to it. We agree. Indeed, as noted in *Local 1064, RWDSU AFL-CIO v Ernst & Young*, 449 Mich 322, 327 n 10; 535 NW2d 187 (1995), "[i]t is well accepted that in ruling on a statute of limitations defense the court may look behind the technical label that [a] plaintiff attaches to a cause of action to the substance of the claim asserted."

Particularly instructive by analogy is the case of *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538; 619 NW2d 66 (2000). In *Crown Technology,* the plaintiff relied on alleged oral promises to waive a contractual provision providing for a prepayment penalty on a promissory note. *Id.* at 543, 547. The statute of frauds, MCL 566.132, required that such promises be in writing to be enforceable. *Id.* at 548. This Court held that the plaintiff could not couch its claims as claims for promissory estoppel and negligence in order to avoid

the requirement of a writing under the statute of frauds. *Id.* at 548-554. With regard to the promissory estoppel claim, the Court stated, in part:

MCL 566.132(2) . . . expressly states that "[a]n action *shall not be brought against a financial institution* to enforce [a promise or commitment to waive a provision of a loan] unless the promise or commitment is in writing and signed with an authorized signature by the financial institution" (emphasis supplied). This language is unambiguous. It plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision.

Crown Technology's argument that MCL 566.132(2) . . . does not eliminate promissory estoppel as a cause of action for an unfulfilled oral promise to waive a loan term is unpersuasive. The statute of frauds specifically bars "an action." By not specifying what sort of "action" MCL 566.132(2) . . . prohibits, we read this as an unqualified and broad ban. We also note that the subsections of MCL 566.132(2) . . . use generic and encompassing terms to describe the types of promises or commitments that the statute of frauds now protects absolutely. This is consistent with interpreting MCL 566.132(2) . . . to preclude *all* actions for the enumerated promises and commitments, including actions for promissory estoppel. Further, it would make absolutely no sense to conclude that the Legislature enacted a new section of the statute of frauds specifically addressing oral agreements by financial institutions but, nevertheless, the Legislature still intended to allow promissory estoppel to exist as a cause of action for those same oral agreements. [*Crown Technology, supra* at 550 (emphasis in *Crown Technology*).]

With regard to the negligence claim, the Court stated, in part:

. . . Crown Technology's negligence claim is intimately related to its promissory estoppel argument concerning D&N Bank's representations about the prepayment pen-

alty. Crown Technology alleged that D&N Bank negligently induced it to believe that it would waive the prepayment penalty. This argument is little more than another way to express the second element of promissory estoppel. Stated differently, plaintiff's "negligence claim" is, at its core, an action to enforce an oral promise and, accordingly, is barred by MCL 566.132(2) .... Crown Technology merely reiterates its belief that D&N Bank, through its employees, knew that its oral representations would induce it to enter into the lease agreement with GE Leasing, forcing it to find other financing and incur the prepayment penalty. Because we may draw reasonable inferences from the facts pleaded in the complaint, we will not defeat MCL 566.132(2) ... by relying on the superficial language of the complaint while ignoring its substance. [*Crown Technology, supra* at 554 (internal citation omitted).]

Thus, the *Crown Technology* Court held that the trial court erred by denying summary disposition for the defendant on the promissory estoppel and negligence claims because no relief was available. *Id.* at 553-554.

We find *Crown Technology* to be instructive by analogy. By way of her MCPA claim, plaintiff ultimately seeks additional no-fault benefits to which she believes she is entitled. Plaintiff raised her MCPA claim in count VI of her complaint. Count VI of the complaint states, in relevant part:

2. That Defendant by its acts, representations, promises, and material omissions as described herein above has, upon information and belief, done one or more of the following:

a. Caused a probability of confusion or misunderstanding as to the legal rights, obligations or remedies owed the Plaintiff pursuant to the No-Fault coverage and No-Fault Act;

b. Represented that the insurance payments were of a particular nature when they were not;

c. Failed to reveal material facts, the omission of which misled and deceived Plaintiff when said facts would not have reasonably been known to Plaintiff;

d. Issued insurance payments for benefits where there were gross discrepancies between the oral representations of Defendant and the nature of the payments being made;

e. Made representations of statements of fact material to the transaction such that Plaintiff reasonably believed the nature of the payments being made was other than it actually was;

f. Failed to reveal facts which were material in light of the representations made in a positive manner;

g. All of the acts [or] omissions alleged above were in violation of the Michigan Consumer Protection Act, MCL 445.901, et seq., and which violations resulted in and caused actual damage to Plaintiff herein.

3. That Plaintiff brings this claim pursuant to Michigan statutory authority and said Defendant violated the Michigan Consumer Protection Act as described above.

4. That as a direct and proximate result of the above referenced violation of the Michigan Consumer Protection Act, Plaintiff has suffered economic loss as set forth herein above, for which said Defendant is liable.

Assuming the truth of the above allegations, plaintiff's relief would be the no-fault benefits of which she was wrongfully deprived. In fact, additional no-fault benefits constitute the "economic loss" to which plaintiff refers in paragraph 4 above. Accordingly, no relief is available to plaintiff because MCL 500.3145(1) bars recovery of benefits for any loss incurred more than one year before the filing of a plaintiff's complaint. MCL 500.3145(1) states:

An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer

within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, *the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.* The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury. [Emphasis added.]

This language is plain and unambiguous, just like the pertinent statutory language in *Crown Technology, supra* at 550. Plaintiff "may not recover benefits for any portion of [her] loss incurred more than 1 year before the date on which the action [for recovery of personal protection insurance benefits] was commenced. . . ." MCL 500.3145(1). All of plaintiff's losses were incurred more than one year before she filed her complaint. Accordingly, defendant was entitled to summary disposition despite plaintiff's labeling count VI as an MCPA claim. The claim was nothing more than a claim for no-fault benefits couched in terms of a claim under the MCPA. We will not "[rely] on the superficial language of the complaint while ignoring its substance." *Crown Technology, supra* at 554. Because the relief plaintiff seeks is barred by the limitations period contained in MCL 500.3145(1),[4]

---

[4] As noted earlier, plaintiff argues in her cross-appeal that the limitations period contained in MCL 500.3145(1) was tolled. As discussed in part V of this opinion, no pertinent tolling of this limitations period occurred.

the trial court should have granted summary disposition to defendant with respect to this claim.

### V. THE NO-FAULT CLAIM

Plaintiff argues that the one-year limitations period applicable to her no-fault claim and contained in MCL 500.3145(1) was tolled because defendant never formally denied her claim for benefits. Plaintiff cites *Lewis v Detroit Auto Inter-Ins Exch,* 426 Mich 93, 101; 393 NW2d 167 (1986), in which the Court concluded that "the one-year-back rule of § 3145 is tolled from the date of a specific claim for benefits to the date of a formal denial of liability." Plaintiff claims that the one-year limitations period was tolled because defendant never denied the claim for benefits, but instead paid benefits according to a rate schedule that did not exist. Plaintiff claims that defendant should have advised plaintiff's family members to submit a claim in the amount that they believed their services were worth. Plaintiff further contends that Grant's periodic inquiries concerning whether the rate schedules had changed did not constitute specific claims for benefits and that defendant's representations that the rates had not changed were not formal denials of benefits. According to plaintiff, because defendant did not formally deny benefits until plaintiff's attorney requested past benefits in December 2001, the limitations period contained in MCL 500.3145(1) was tolled until that time. We disagree.

As noted, in *Lewis, supra* at 101, the Supreme Court held that the one-year limitations period contained in MCL 500.3145(1) is tolled from the time that a claimant files a specific claim for benefits until the date that an insurance company formally denies the claim. See also *Johnson v State Farm Mut Automobile Ins Co*, 183 Mich App 752, 759-760; 455 NW2d 420 (1990). The *Lewis*

Court did not indicate, however, what constitutes a "specific claim for benefits" or a "formal denial" of benefits. In *Bourke v North River Ins Co*, 117 Mich App 461, 470; 324 NW2d 52 (1982), this Court held that, although a formal denial of benefits need not always be in writing, "something more than a verbal denial by a single adjuster is required."

In this case, plaintiff filed her application for benefits in March 1995. Thereafter, defendant began paying benefits to plaintiff. Grant, on plaintiff's behalf, periodically inquired of defendant whether the approved rate of ten dollars or eleven dollars an hour for family members had changed. Defendant continually advised Grant that the rate had not changed and compensated plaintiff's family members at the ten-dollar-an-hour or eleven-dollar-an-hour rate until the fall of 1999, when the family incorporated and was paid the agency rate of twenty-two dollars an hour. We conclude that a "specific claim for benefits" and a "formal denial" of those benefits within the meaning of *Lewis* occurred in the unique circumstances of this case by virtue of (1) plaintiff's initial application for benefits, (2) the periodic inquiries by Grant about whether the applicable rate had changed, (3) defendant's oral denials of increased benefits, and (4) the continual payment by defendant at the lower rate despite Grant's continued requests for additional compensation. Plaintiff's family members sent defendant documentation indicating the number of hours that each person worked, and defendant then compensated the family members in the form of a check. Before the family incorporated in the fall of 1999, the checks were based on an hourly rate of ten dollars or eleven dollars an hour. Grant periodically requested a higher rate of compensation, his requests were always orally denied, and defendant continued to issue checks at the lower rate. Under the

circumstances of this case, defendant formally denied benefits at the higher rate within the meaning of *Lewis*. The trial court correctly concluded that MCL 500.3145(1) barred plaintiff from recovering the damages she sought.[5]

Plaintiff relies on *Bridges v Allstate Ins Co*, 158 Mich App 276, 280; 404 NW2d 240 (1987), in support of her argument that underpaying a claim tolls the running of the period of limitations under MCL 500.3145(1). In *Bridges*, the plaintiff was involved in a motor vehicle accident on March 6, 1981, and the defendant insurer issued him a check for wage loss benefits covering a specific period. *Id.* at 277. On June 11, 1982, the plaintiff filed his first complaint alleging that the defendant only partially compensated him for wage loss and medical expenses. *Id.* On December 16, 1983, after numerous procedural irregularities, including the dismissal of the first suit, the plaintiff filed his third complaint seeking payment of additional no-fault benefits. *Id.* at 277-278. The defendant argued that the suit was barred by the one-year statute of limitations for no-fault benefits because all benefits had accrued more than one year before the filing of the plaintiff's third complaint. *Id.* at 278-279. The plaintiff responded that because the defendant never formally denied the claim, the statute of limitations was tolled from the time the plaintiff notified the defendant of his need for continued benefits. *Id.* at 279.

Applying *Lewis*, this Court held that the defendant's failure to deny formally the plaintiff's claim tolled the statute of limitations. *Id.* at 280. The Court recognized

---

[5] We note that plaintiff, in her cross-appeal, focuses on the attendant care "benefits paid according to a rate schedule that [allegedly] didn't exist" (i.e., the periodic benefits paid before the family's incorporation in 1999) and does not mention the vans.

that the defendant did not contest the fact that it did not formally deny the plaintiff's claim until filing its answer to the *third* complaint in January 1984. *Id*. The Court also noted that the parties were engaged in negotiations throughout much of the litigation and stated that it appeared that the plaintiff thought it possible that his claim would be paid without resorting to litigation. *Id*. at 280-281.

This case is distinguishable from *Bridges*.[6] In this case, defendant asserted, at the summary disposition hearing, that it formally denied plaintiff's claim and cited Grant's admissions that requests for additional compensation were always denied. Moreover, this case involved ongoing payments that were made at a rate about which plaintiff periodically inquired. It was also clear in this case that additional compensation would not be forthcoming and that litigation would be necessary if plaintiff were to recover the additional benefits sought; there were no ongoing negotiations in this case as in *Bridges*. *Bridges* does not mandate a reversal here.[7]

Affirmed in part and reversed in part. We do not retain jurisdiction.

---

[6] We also note that *Bridges* is not strictly binding on this Court because it was issued before November 1, 1990. MCR 7.215(J).

[7] The trial court's basis for granting summary disposition with regard to plaintiff's no-fault claim is not entirely clear. It appears that the court granted the motion because plaintiff was aware that defendant paid agencies at a higher rate and because it would not serve the purposes of tolling to toll the statute of limitations in this case. At any rate, even though the court explicitly held that no "formal denial" of benefits occurred, this Court will not reverse a trial court's decision when it reaches the correct result for the wrong reasons. *Outdoor Systems, Inc v Clawson*, 262 Mich App 716, 720 n 4; 686 NW2d 815 (2004).