**CHRISTOPHER & JOHN, INC.,**
Plaintiff,

v.

**MARYLAND CASUALTY CO.,**
Defendant,

**First Vermont Bank and Trust Co., Intervenor.**

No. 78 Civ. 4394.

United States District Court,
S. D. New York.

Feb. 20, 1980.

**610**

Archibald A. Patterson, New York City, for plaintiff.

Alexander A. Pignato, Rockville Centre, N. Y., for defendant.

Matalon & Schachter, New York City, for intervenor; Ralph A. Matalon, New York City, of counsel.

LASKER, District Judge.

The issue to be resolved is whether the plaintiff, Christopher and John, Inc., or the intervenor, First Vermont Bank & Trust Co., is entitled to the proceeds of a fire insurance policy issued by the defendant, Maryland Casualty Co.

In May, 1975, First Vermont loaned $35,000 to Charles Wallis, secured by a mortgage on premises owned by Wallis in Wallingford, Vermont. The mortgage required Wallis to maintain fire insurance on the premises for the benefit of the mortgagee. Wallis obtained such insurance in his name, under a policy incorporating a standard mortgage clause that provided:

"Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy, provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee (or trustee) shall, on demand pay the same."

On its first page, the policy provided that "[s]ubject to the provisions of the mortgage clause attached hereto, loss, if any, on building items, shall be payable to" First Vermont. When the mortgage was acquired, John D. Cooney, the insurance agent who issued the policy, certified that he would notify First Vermont if the policy was cancelled or not renewed.

Also in May, 1975, Wallis leased a portion of the mortgaged premises to Christopher and John, Inc., a corporation owned equally by his wife and himself. Christopher and John conducted business on the premises as "The Blue Boar Pub." The lease from Wallis to Christopher and John required the lessor to repair any fire damage to the premises, and Christopher and John did not secure fire insurance to protect its leasehold interest in the property. However, when the existing policy in the name of Charles Wallis came up for renewal in August, 1977, it was "renewed" in the name of the Blue Boar Pub. In all other respects, the new policy was identical to the old one, and in particular, it identified First Vermont as a mortgagee protected by the standard mortgage clause. John D. Cooney did not notify First Vermont that the policy had not been renewed.

In March, 1978, fire destroyed the mortgaged premises, and Charles Wallis died. When this action was commenced, Maryland Casualty Company stipulated that the fire loss exceeded the coverage provided in the policy, and deposited the full amount of the policy with the court. First Vermont intervened, asserting a right to the proceeds of the policy under the standard mortgage

clause. Christopher and John and First Vermont now cross-move for summary judgment, each seeking an order directing that the proceeds of the policy be paid to it.

Christopher and John argues that it is the named insured under the "renewal" policy issued in 1977 in the name of the Blue Boar Pub, and that consequently the interest insured was its leasehold and the appurtenant food and liquor licenses, inventories, and equipment. Since First Vermont has never had a lien on *this* property, it is, by the terms of the standard mortgage clause, which provides for payment to the mortgagee only "as [its] interest may appear," entitled to no portion of the insurance proceeds.

First Vermont contends, first, that under the standard mortgage clause its interest cannot be "invalidated by any act or neglect of the mortgagor," and that the "renewal" of the policy in the name of the Blue Boar Pub rather than in the name of Charles Wallis (who was required to maintain fire insurance on the premises), constituted an "act or neglect of the mortgagor"; and second, that it was never intended that the "renewal" policy cover Christopher and John's interest rather than Wallis'—that is, that the change in the name of the insured on the policy was inadvertent.

■ First Vermont's first argument misconstrues the meaning of the standard mortgage clause. A similar clause was recently analyzed at length in *Grady v. Utica Mutual Insurance Co.*, 69 A.D.2d 668, 419 N.Y.S.2d 565 (2d Dept. 1979).[1] There the court noted:

"The effect of the standard mortgagee clause is simply to require that payment of the loss be first made to the mortgagee up to the extent of his interest and that the balance be remitted to the mortgagor. . . . However, where the mortgagor is in default of any of the conditions of the policy, the insurer is not liable to him thereunder and it need only pay the mortgagee up to the extent of the mortgagee's interest."

*Id.* at 673–674, 419 N.Y.S.2d at 569; *see Eddy v. London Assurance Corp.*, 143 N.Y. 311, 38 N.E. 307 (1894); *Hartwig v. American Insurance Co.*, 169 App.Div. 60, 154 N.Y.S. 801 (1915). The effect of the standard mortgage clause, then, is simply to ensure that the mortgagee will not lose the protection accorded it by the policy because of acts or omissions of the insured that defeat *its* rights under the policy. Here, however, there is no question of the insureds being in default on the policy—the question, rather, is who was the insured at the time of the fire. If it was Wallis, then First Vermont has an interest protected by the standard mortgage clause; if it was Christopher and John, it has none.

The only real question, then, is whether it was intended, when the insurance policy was "renewed," that the coverage provided be changed, or whether it was intended that the old policy lapse and a new policy be issued for the benefit of a different insured. First Vermont argues that the uncontested circumstances surrounding the issuance of the "renewal" policy establish that no real change in the terms of the policy was intended. Christopher and John takes the contrary position, and asserts that it is plain on the face of the policy that it and not Wallis was the insured, and that consequently extrinsic evidence may not be considered to vary the plain meaning of the contract. It may well be, Christopher and John argues, that Wallis did not live up to his obligation to maintain fire insurance on the premises, but this is no reason to impair Christopher and John's rights under a policy in its name. The bank's remedy (in addition to foreclosure) is to sue Wallis' estate, and, if necessary, the insurance agent who neglected to inform it that the policy in Wallis' name had not been renewed.

■ We find First Vermont's position the more persuasive. The insurance policy is

---

1. The parties have not discussed the question whether New York or Vermont law governs the interpretation of the insurance policy involved here, though both parties rely exclusively on New York authorities. For present purposes, we assume that the Vermont courts would read the standard mortgage clause substantially the same way the New York courts do.

not so clear on its face that resort to extrinsic evidence as an aid to construction is precluded. In particular, the policy clearly purports to be a renewal of a prior policy, even though there was no prior policy in the name of the Blue Boar Pub. This inconsistency warrants reference to surrounding circumstances for an explanation.

■ When the surrounding circumstances are examined, the more reasonable conclusion is that the new policy was a renewal of the old one. It is especially significant that under the lease between Christopher and John and Wallis the risk of fire damage was borne by the latter, and that, consistent with this, Christopher and John did not secure fire insurance during the first two and one-half years of the lease. Moreover, the policy's description of the property covered is not coterminous with the interest that Christopher and John now contends was covered. Thus, the policy speaks of a "[t]wo story frame building occupied as an apartment and restaurant equally," not of a "leasehold and appurtenant licenses, inventories and equipment." Moreover, there is the fact, mentioned above, that on its face the new policy purports to be a renewal of the old one, to which it refers expressly, not a new policy issued to a different insured. Although hardly determinative, there is also the fact that the insurance agent apparently did not believe that the new policy impaired the bank's interests, since it did not notify the bank when the new policy was issued. Finally, to accept Christopher and John's argument is to assume not simply that Charles Wallis intended to change his insurance, but that he intended to defraud the bank and ignore his duties to it under the mortgage. In the absence of any indication whatsoever that this was in fact his intention, there is no warrant for assuming that he intended to eliminate the bank's interest in the insurance policy through a leasing arrangement with a corporation wholly owned by him and his wife.

In sum, we conclude that First Vermont is entitled to recover on the policy as its interest may appear.

For the reasons stated, Christopher and John's motion for summary judgment is denied and First Vermont's is granted. First Vermont is directed to submit a judgment on notice directing the clerk of the court to pay to it so much of the fund deposited with the court as it is entitled to, and to pay the remainder, if any, to Charles Wallis' estate.

It is so ordered.