JOHNSON v STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

Docket Nos. 114112, 115469. Submitted January 3, 1990, at Detroit. Decided May 21, 1990.

Bill Johnson, Jr., was killed on September 2, 1984, when his motorcycle was involved in an accident with an uninsured vehicle which was being driven by an uninsured driver. The motorcycle was insured under a policy issued by State Farm Mutual Automobile Insurance Company. The deceased and his wife, Alma H. Johnson, also had an automobile no-fault insurance policy issued by State Farm on an automobile they owned. Within twenty-four hours of the accident, Alma Johnson notified the State Farm insurance agent who had written both policies of Bill Johnson's death and sought benefits under the motorcycle policy. She did not specifically demand payment of benefits under the automobile no-fault policy until shortly before January 21, 1987, when, as personal representative of the estate of Bill Johnson, Jr., she commenced an action for benefits against State Farm in Wayne Circuit Court. A later amended complaint named Alma Johnson in her individual as well as representative capacity as plaintiff. Defendant moved for summary disposition on the basis that the one-year period of limitation had run. The trial court, Marvin R. Stempien, J., denied that motion on the basis of a need for an evidentiary hearing. The matter went to mediation and, on April 5, 1988, the claim was mediated. Plaintiff accepted the mediation award and defendant rejected it. The parties filed a joint stipulated statement of facts and cross-motions for summary disposition. Judge Stempien denied defendant's motion and granted plaintiff's motion, finding that the filing of the claim under the motorcycle policy acted as the required statutory notice of a claim under the no-fault policy and tolled the running of the limitation period. Judgment in the amount of $82,072 was entered in favor of plaintiff. Defendant appealed. Plaintiff

REFERENCES

Am Jur 2d, Automobile Insurance §§ 347, 369, 429.

When statute of limitations commences to run on automobile no-fault insurance personal injury claim. 36 ALR4th 357.

moved for mediation sanctions. Defendant argued that mediation sanctions were not proper because the matter had been decided on motion before trial had commenced. Judge Stempien granted mediation sanctions. Defendant appealed. The appeals were consolidated.

The Court of Appeals *held:*

1. Plaintiff's notifying the agent of defendant who had issued both the motorcycle and no-fault policies satisfied the notice requirement of the no-fault act so as to toll the running of the statutory limitation period. Such notice also tolled the running of the period under the one-year-back rule until such time as defendant had specifically refused to pay any no-fault benefits, since defendant either knew all that was necessary to process the claim or knew or should have known that plaintiff was entitled to benefits under the no-fault policy.

2. The court rule dealing with mediation sanctions was amended on December 31, 1987, to include within the meaning of "verdict" as used in the mediation rule "a judgment entered as a result of a ruling on a motion filed after mediation." That amendment evidences a clear intent that mediation sanctions are to be applicable where, as here, a judgment is entered subsequent to mediation as a result of a ruling on a motion even though trial of the matter had not yet commenced.

Affirmed.

1. INSURANCE — NO-FAULT — LIMITATION OF ACTIONS — NOTICE OF CLAIM — MOTORCYCLE INSURANCE.

The filing of a claim for benefits under a motorcycle insurance policy with an insurer which had issued to the insured both the motorcycle policy and an automobile no-fault policy will act as the written notice of injury required to toll the period of limitations contained in the no-fault act; such notice also tolls the one-year-back rule contained in the limitation provision of the no-fault act until such time as the insurer formally denies the no-fault claim; the insured does not need to specifically pursue recovery of no-fault benefits in addition to benefits under the motorcycle policy where both policies were purchased through the same agent who was informed of the loss (MCL 500.3145[1]; MSA 24.13145[1]).

2. COSTS — MEDIATION — SANCTIONS — COURT RULES.

Mediation sanctions may be awarded under the court rule as amended in 1987 against a party who rejects a mediation valuation where a judgment in favor of the opposing party is entered as a result of a ruling on a motion filed after mediation irrespective of whether trial has actually commenced unless

that judgment is more favorable to the rejecting party than the mediation award (MCR 2.403[O]).

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Konrad D. Kohl, Janet G. Callahan* and *John Mitchell*), for plaintiff.

*Romain, Donofrio, Kuck & Egerer, P.C.* (by *Ernst W. Kuck*), for defendant.

Before: CAVANAGH, P.J., and SAWYER and T. G. KAVANAGH,* JJ.

SAWYER, J. In Docket No. 114112, the trial court entered an order granting summary disposition to plaintiff in the amount of $82,072, plus interest and costs, after the matter was submitted to it on stipulated facts. In Docket No. 115469, the trial court entered an order granting plaintiff mediation sanctions in addition to taxable costs in light of its order granting judgment in favor of plaintiff. Defendant now appeals and we affirm.

The matter was submitted to the trial court on stipulated facts. According to the stipulation, plaintiff's husband was killed in an automobile accident while driving his motorcycle on September 2, 1984. The decedent was insured under a motorcycle policy issued by defendant, which had also issued an automobile policy to decedent for a 1982 Buick. Both policies had been written by the same agent, with whom plaintiff and decedent had been dealing for more than twenty years. Plaintiff informed the agent of the accident within twenty-four hours. By December 3, 1984, it was discovered that both the driver of the other vehicle involved in the accident and the vehicle itself were uninsured. State Farm was informed of this fact. Al-

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

though plaintiff had requested coverage under the motorcycle policy, she did not specifically demand the payment of benefits under the automobile policy until shortly before this action was commenced on January 21, 1987. It is plaintiff's entitlement to benefits under the automobile policy which is the subject of this appeal.

On appeal, defendant first argues that the trial court erred in concluding that plaintiff's notice of injury with respect to the uninsured motorist claim under the motorcycle policy constituted sufficient notice of a claim for personal protection insurance benefits under the automobile policy and, therefore, erred in concluding that the period of limitations had not run. We disagree.

MCL 500.3145(1); MSA 24.13145(1) provides that an action to recover personal protection insurance benefits must be commenced not later than one year after the date of the accident, unless the insured gave written notice of injury to the insurer within one year after the accident or unless the insurer has previously paid personal protection insurance benefits for the injury. Here, plaintiff gave notice to defendant, through its agent, of her loss (the death of her husband in the accident) shortly after the accident, though in the context of a claim under the motorcycle policy. Plaintiff did not specifically provide a notice of injury under the automobile policy. Defendant's position is, essentially, that, although plaintiff would otherwise be entitled to receive benefits under the automobile policy, the notice of injury under the motorcycle policy is insufficient to constitute a notice of injury under the automobile policy and, because the current action was not commenced within one year of the accident, plaintiff is precluded from receiving those benefits to which she is otherwise entitled. Defendant maintains this position despite

the fact that it is the insurance carrier for both the motorcycle and the automobile policy and, in fact, it was the same agent who wrote both policies. We find defendant's position to be untenable.

The case at bar is on all fours with this Court's decision in *State Farm Mutual Automobile Ins Co v Ins Co of North America,* 166 Mich App 133; 420 NW2d 120 (1988). Oddly enough, defendant in the instant action was able to prevail in the *State Farm* case by taking a position 180 degrees opposite from the position it takes in the instant case.[1]

In *State Farm,* the insured was injured in a motor vehicle accident during the course of his employment. The insured at the time of the accident was insured for personal protection insurance benefits under a no-fault automobile policy issued by State Farm. The insured's employer was insured for both automobile no-fault and workers' compensation liabilities by a policy issued jointly by the Insurance Company of North America and Aetna Insurance Company. Following the accident, the insured applied for and received workers' compensation benefits from INA/Aetna. Also, an "Employer's Basic Report of Injury" was made. In addition, the insured applied for and received no-fault benefits from State Farm, which were coordinated with the workers' compensation benefits paid by INA/Aetna.

State Farm, however, thereafter terminated no-fault benefits, resulting in the insured suing State Farm. State Farm raised the affirmative defense that the insured's employer's no-fault carrier had the greater priority in providing no-fault benefits. State Farm counterclaimed against the insured to

---

[1] Since we believe that the *State Farm* case was correctly decided, we need not address the issue raised by plaintiff below concerning whether defendant is "judicially estopped" from denying the correctness of this Court's decision in *State Farm, supra,* since it had advocated that position in the prior case.

recover the benefits it had already paid him. The insured then added INA and Aetna as defendants to the action, claiming that they had notice of his injury through the notice of injury provided pursuant to the workers' compensation claim. INA/Aetna raised the defense of the statute of limitations and one-year-back rule contained in MCL 500.3145(1); MSA 24.13145(1). Thereafter, State Farm and the insured settled their dispute and the insured assigned his claim against INA/Aetna to State Farm.

On appeal, State Farm took the position that the notice of injury provided to INA/Aetna under the workers' compensation claim was sufficient to constitute a notice of injury under the no-fault policy issued by the same carriers, thus coming within the statutory exception to the one-year period of limitations contained in § 3145. This Court agreed, concluding that the statutory requirement for a notice of injury was met by the notice provided to the same carriers under the workers' compensation claim. *State Farm, supra* at 140-141. The Court specifically noted that the statute does not require that the notice of injury be addressed to a particular department of the insurer and that the notice provided under the workers' compensation claim satisfied the statutory requirements for a notice of injury under a no-fault claim. *Id.*

We believe that the reasoning in *State Farm, supra,* is sound. Section 3145 specifically states what must be contained in a notice of injury: namely, the name and address of the claimant, plus a description in ordinary language of the name of the person injured and the time, place and nature of the injury. As noted by the *State Farm* Court, the statute does not direct that the notice must be sent to any particular department within the insurance company nor, for that mat-

ter, does the statute provide that the notice of injury must specifically identify under which insurance policies the claimant is claiming benefits. To accept defendant's theory, we would have to conclude that plaintiff was obligated to tell her insurance agent about her loss twice: once for the motorcycle policy and once for the automobile policy. Such a requirement is absurd.

The statutory requirement of a notice of injury serves to put the insurance company on notice that a loss has occurred and to provide the company with basic information concerning the loss: namely, the name of the person who suffered the loss and the time, place and nature of the injury. Defendant received that information in the case at bar within a reasonably short time after the accident occurred. It is, in our opinion, irrelevant whether plaintiff provided that information for purposes of recovering benefits under the motorcycle policy or for recovering benefits under the automobile policy. The fact remains that defendant received the notice of injury. Indeed, plaintiff's position in the case at bar is even stronger than was State Farm's position in *State Farm, supra,* since two entirely different kinds of insurance were involved in that case, no-fault automobile coverage and workers' compensation coverage, while in the case at bar there are two closely related forms of insurance, automobile and motorcycle, involved. Indeed, the person to whom plaintiff provided the notice of injury under the motorcycle policy, her insurance agent, was the same individual to whom she would provide the second notice of injury under the automobile policy, which defendant would have us conclude was necessary.

For the above reasons, we conclude that *State Farm, supra,* is applicable to the case at bar and

we hold that plaintiff was required only to give one notice of injury to defendant and that that notice of injury was sufficient to provide defendant with notice with respect to all policies issued by defendant to plaintiff or plaintiff's decedent. We should, however, briefly acknowledge that defendant does cite some contrary precedent which held that notice to an insurer of a workers' compensation claim does not serve as notice of injury for a no-fault claim. These cases were discussed in *State Farm, supra,* and disapproved of. *Id.* at 139-140. We agree with the *State Farm* Court's analysis and conclude that there is no need to discuss those contrary cases in detail.

Having concluded that plaintiff filed a sufficient notice of injury with defendant to toll the period of limitations set forth in § 3145(1), it is now necessary to determine whether the so-called "one-year-back rule" contained in § 3145(1) is also tolled. Under the one-year-back rule, even where the period of limitations is tolled under the notice of injury or payment of benefits exceptions, an insured can only recover benefits for losses incurred within one year preceding the commencement of the action. However, the Supreme Court, in *Lewis v DAIIE,* 426 Mich 93, 101-102; 393 NW2d 167 (1986), held that the one-year-back rule is tolled during the time a claim is under investigation by an insurance company:

> We now reach the question that the *Welton* [v *Carriers Ins Co,* 421 Mich 571; 365 NW2d 170 (1984)] Court reserved and conclude that the one-year-back rule of § 3145 is tolled from the date of a specific claim for benefits to the date of a formal denial of liability. We believe this result effectively preserves the Legislature's purpose. As Justice Boyle stated in *Welton:*
>
> "Tolling the statute when the insured submits a

claim for specific benefits would not appear to detract from the policies underlying the one-year limitation on recovery. By submitting a timely and specific claim, the insured serves the interest in preventing stale claims by allowing the insurer to assess its liability while the information supporting the claim is relatively fresh. A prompt denial of the claim would barely affect the running of the limitation period, while a lengthy investigation would simply 'freeze' the situation until the claim is eventually denied. In effect, the insured would be charged with the time spent reducing his losses to a claim for specific benefits plus the time spent deciding whether to sue after the claim is denied. [*Id.*, 578-579.]"

Most persons are confident that, in the event of a loss, their insurer will pay their claim without the necessity for litigation. It is only when an insurer denies liability that it is unequivocally impressed upon the insured that the extraordinary step of pursuing relief in court must be taken. A contrary result today would require the prudent claimant to file suit as a precautionary measure when the one-year deadline approached, regardless of the status of the claim. In addition to requiring a level of sophistication many claimants may not possess, such an approach would encourage needless litigation. One of the important reasons behind the enactment of the no-fault system was the reduction of automobile accident litigation. *Cassidy v McGovern,* 415 Mich 483, 501; 330 NW2d 22 (1982).

Thus, the one-year-back rule is tolled from the time a claimant makes a specific claim for benefits until the insurer formally denies that claim.

The case at bar raises the question whether plaintiff did make a specific claim for benefits sufficient to toll the one-year-back rule. In their stipulations, the parties agree that no specific claim for benefits was submitted to defendant prior to the commencement of this action. On

appeal, plaintiff, in line with the stipulation, does admit that she made no claim for any specific dollar amount of benefits, but claims that she did make a sufficiently specific claim for damages to toll the one-year-back rule. We agree. Although the Supreme Court in *Lewis, supra,* as well as in its earlier opinion in *Welton, supra,* makes reference to a claimant's making a "specific claim for benefits," their opinions do not define what constitutes a "specific claim for benefits" for purposes of tolling the one-year-back rule. We conclude that the actions taken by plaintiff in the case at bar were sufficient to toll the one-year-back rule.

The parties agree that plaintiff informed defendant of the decedent's fatal accident within twenty-four hours of the accident, including the fact that decedent died as a result of that accident. Furthermore, the parties agree that defendant was aware no later than December 3, 1984, that the other driver and vehicle involved in the accident were both uninsured, thus making defendant the highest priority for the payment of personal protection insurance benefits.[2] At that point, defendant thus had all the information it needed, other than perhaps the amount of the decedent's wages, to calculate the exact amount of survivor's loss benefit to which plaintiff was entitled. See MCL 500.3108; MSA 24.13108. We further note that the parties stipulate that plaintiff would testify that she met with defendant's adjuster, Cheryl Baum, on March 6, 1985, and specifically inquired as to

---

[2] Under MCL 500.3114(5); MSA 24.13114(5), the order of priority for providing personal protection insurance benefits to the operator or passenger of a motorcycle involved in an accident with a motor vehicle is the insurer of the owner or registrant of the motor vehicle, the insurer of the operator of the motor vehicle, the motor vehicle insurer of the operator of the motorcycle, and the motor vehicle insurer of the owner or registrant of the motorcycle. Here, the highest priority was number three, the motor vehicle insurer of the operator of the motorcycle, namely, defendant.

whether she was entitled to benefits under the automobile policy and that she received no response from Baum in response to that inquiry. The parties further stipulate that the meeting did take place, but that Baum would testify that she had no recollection of whether plaintiff ever asked that question. The parties further agree that Baum would testify that she would have given plaintiff an answer to that question because she knew that the answer would be that plaintiff was entitled to benefits.

Defendant would have us conclude that, in order to apply the tolling provisions under *Lewis, supra,* it is necessary that plaintiff have specifically filed a claim for survivor's loss benefits under the automobile policy. We disagree. We do not believe it necessary for an insured to specifically inform the insurer of those portions of specific insurance policies under which the insured demands the payment of benefits. Rather, we believe that all an insured could reasonably be expected or required to do is inform the insurer of the specific loss for which benefits are sought. That is, once defendant was aware that plaintiff's decedent was involved in a fatal accident and that defendant had the highest priority for payment of no-fault benefits under that automobile policy issued to the decedent, defendant should have processed a survivor's loss claim on behalf of plaintiff. Thus, once defendant received sufficient information to be informed that plaintiff suffered a compensable loss, the one-year-back rule was tolled until such time as defendant formally denied the payment of benefits under the automobile policy.

In the alternative, we would hold that, even if tolling under *Lewis, supra,* is not applicable to the case at bar, the one-year-back rule should nevertheless be tolled for that period from which defen-

dant knew or reasonably should have known that plaintiff was entitled to benefits under the automobile policy until such time as defendant either formally and explicitly denied liability for benefits or affirmatively informed plaintiff that she might be entitled to benefits under the policy and requested that she file a formal claim of benefits under the policy. As it is, defendant knew that plaintiff had suffered a loss. Also, within approximately three months of the accident defendant knew that both the driver and motor vehicle involved were uninsured. Finally, defendant knew, within six months of the accident, that plaintiff wished to collect benefits under the decedent's automobile policy.[3] Under such circumstances, we do not believe that defendant is entitled to avail itself of the one-year-back rule.

As the *Lewis* Court noted, one of the important purposes behind the enactment of the no-fault system was to reduce automobile accident litigation. *Lewis, supra* at 102. Furthermore, as the *Lewis* Court noted, most persons are confident that their insurer will pay a claim without the necessity of litigation. *Id.* at 101. The corollary to those principles is that first-party claims ought to be paid by an insurance company without the necessity of the involvement of attorneys. However, it defies common sense to expect that most lay persons possess a sufficient level of sophistication with insurance matters and the no-fault statute to be able to specifically inform their insurance compa-

---

[3] While the fact that this matter was submitted on stipulated facts prevents the gauging of the credibility of the witnesses, we must conclude that plaintiff did specifically inquire as to whether she was entitled to benefits under the automobile policy at the March 6, 1985, meeting with the claims adjuster since plaintiff does specifically aver that that request was made and defendant does not contradict that statement with more than an "I don't recall" type statement from the adjuster.

nies of which benefits they believe they are entitled to receive under their insurance policies.

Rather, what can reasonably be expected of insureds is that they inform their insurance agent of the occurrence of an insured loss and specifically inform the insurer of the nature of the losses suffered, such as death, bodily injury, hospitalization, property damage to the vehicle, etc. An insured ought then be able to reasonably rely on the agent to advise the insured of the benefits to which the insured might be entitled and to provide the insured with the appropriate claim forms to be filed. Put another way, with respect to first-party benefits, the insured and the insurer are not supposed to be adverse parties. To hold otherwise would be to ignore the primary purpose of the no-fault system: namely, to provide for the prompt and efficient payment of benefits. *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978). Had the Legislature intended that an insured would have to fight for the payment of benefits, it presumably would have been content with keeping the tort system.

Defendant claims that it was necessary for plaintiff to specifically demand coverage under the automobile policy because, until plaintiff made such demand, it had no way of knowing that the automobile policy even existed. Defendant's claim is specious. In essence, defendant maintains that it could not be aware of the existence of an insurance policy which it itself had issued until such time as plaintiff had brought the existence of the policy to its attention. Here, not only were the policies issued by the same company, but also they had been written by the same agent. Clearly, it is not an undue burden to require defendant to be aware of the policies which it issues. Accordingly, we hold that defendant knew, or should have

known, what policies had been issued by itself to plaintiff and the decedent.

To rule in defendant's favor would serve as an endorsement for an insurance company to wilfully withhold information from its insured, namely, what first-party benefits the insured might be entitled to, in hopes that the insured will not discover on his own what specific benefits under a policy he is entitled to receive. To allow insurance companies to engage in such maneuvering would be inconsistent with the purposes underlying the no-fault act. Simply put, it is an insurer's obligation under the no-fault act to ensure that its insureds receive the prompt and fair payment of benefits to which the insureds are entitled without undue delay or the necessity of litigation, or even the need to retain counsel. To this end, we hold that the one-year-back rule is tolled from the time that an insured notifies his insurer of a specific loss which the insurer knows, or has reason to know, is compensable under a policy issued by the insurer to the insured until such time as the insurer either (1) formally denies coverage under the policy or (2) specifically advises its insured that he may be entitled to benefits under a policy issued by the company and specifically advises the insured to file a claim, providing the insured with any forms necessary to file such a claim.[4]

In the case at bar, defendant knew or should have known no later than December 3, 1984, that its insured had suffered a loss (namely, the death of decedent in a motorcycle accident) and that it was the highest priority insurer for personal protection insurance and, therefore, that plaintiff was entitled to survivor's loss benefits under the auto-

---

[4] Of course, once the insured files such a claim, the provisions of *Lewis, supra,* apply and the one-year-back rule is again tolled until such time as that claim is denied.

mobile policy. Furthermore, since defendant neither specifically advised plaintiff of her entitlement to those benefits and that she should file a claim nor formally denied coverage under the automobile policy prior to the filing of the instant action, we hold that the one-year-back rule was tolled from December 3, 1984, until the date the complaint was filed. Accordingly, the one-year-back rule does not serve to limit plaintiff's recovery in this case.

Finally, defendant maintains that plaintiff did not exercise reasonable diligence in pursuing her claim as required by *Lewis, supra* at 102-103. We disagree. Admittedly, plaintiff could have been more diligent in pursuing a claim, and we are troubled by the fact that she was represented by counsel during this period with little action on the first-party benefits. However, we put little weight on the fact that she was represented by counsel inasmuch as plaintiff retained counsel to pursue a wrongful death action, not to pursue first-party benefits. Indeed, as discussed above, the no-fault system is designed to provide for the payment of first-party benefits without the need of an attorney becoming involved. Moreover, we also note that defendant was not reasonably diligent in advising its insured of the benefits to which she was entitled and in providing her with any appropriate claim form for her to file to claim those benefits. We would have no difficulty attributing the delay to plaintiff and concluding that the one-year-back rule applied had defendant, either through the insurance agent with whom plaintiff dealt or through the claims adjuster, advised plaintiff of the coverage which was applicable to her loss and provided her with a claim form to seek benefits under that coverage. Had defendant done so, and plaintiff neglected to file a claim, we would have

no difficulty in charging that delay against plaintiff. Moreover, there is no indication in the stipulated facts that plaintiff neglected or refused to answer an inquiry by defendant or to otherwise provide any additional information requested by defendant. At a minimum, it can be said that plaintiff was as reasonably diligent in pursuing her claim as defendant was in processing it.

Although our reasoning may differ somewhat from the trial court's, the trial court reached the correct conclusion: namely, that plaintiff was entitled to recover the full amount of survivor's loss benefits due her from defendant. We find defendant's arguments as to why it should not be required to pay the benefits to which plaintiff is clearly entitled to be meritless. To paraphrase a comment by the trial court at the hearing on this matter, the time has come for defendant to be a "good neighbor" and pay the claim.

Next, we turn to the issue raised in Docket No. 115469: whether mediation sanctions may be imposed where a case is summarily decided on motion, after mediation, but prior to the commencement of trial. MCR 2.403(O) provides in pertinent part as follows:

Rejecting Party's Liability for Costs.

(1) If a party has rejected an evaluation and the action proceeds to trial, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the mediation evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the mediation evaluation.

(2) For the purpose of this rule *"verdict"* includes,

(a) a jury verdict,

(b) a judgment by the court after a nonjury trial,

(c) *a judgment entered as a result of a ruling on
a motion filed after mediation.* [Emphasis added.]

Defendant maintains that, in order for mediation sanctions to be imposed, it is necessary that the trial actually commence. We disagree. MCR 2.403(O) was amended in 1987 to add to the definition of "verdict" a judgment entered as a result of a ruling on a motion filed after mediation. MCR 2.403(O)(2)(c).

The effect of the 1987 amendment appears to present a question of first impression. Prior to the 1987 amendment, MCR 2.403(O) was read as requiring that trial must have commenced before a party was liable for mediation sanctions. See *Herrera v Levine,* 176 Mich App 350, 359; 439 NW2d 378 (1989). This Court has yet to decide whether the 1987 amendment allows for the imposition of mediation sanctions where a matter is decided by motion prior to the commencement of trial, though this Court did speculate in *O D Silverstein, MD, PC v Services, Inc,* 165 Mich App 355, 360, n 2; 418 NW2d 461 (1987), that such might be the effect of the 1987 amendment. Similarly, there is dicta in the decision in *Herrera, supra* at 359-360, wherein the Court noted that, had the amendment applied to that case, it "would have rendered this issue [whether sanctions could be awarded where trial had not commenced] moot."

We conclude that a proper interpretation of the language used by the Supreme Court in promulgating the 1987 amendment to the court rule requires a conclusion that mediation sanctions are awardable where a matter is decided by motion after mediation evaluation but before the commencement of trial. Specifically, MCR 2.403(O)(2)(c) defines the word "verdict" as used in the subrule as including "a judgment entered as a result of a

ruling on a motion filed after mediation." Had the Supreme Court merely wished to include within the definition of "verdict" those cases where a matter is disposed of by motion after the commencement of trial, it would have said so. Since the Supreme Court chose to use the phrase "a motion filed after mediation" rather than "a motion filed after the commencement of trial," or a similar phrase, we can only conclude that the Court intended to include those cases which are disposed of by motion following mediation but prior to the commencement of trial. Accordingly, we conclude that the trial court correctly imposed mediation sanctions in the case at bar.

For the above reasons, we conclude that the trial court correctly granted judgment in favor of plaintiff and correctly ordered the imposition of mediation sanctions against defendant.

Affirmed. Costs to plaintiff.

T.G. KAVANAGH, J., concurred.

CAVANAGH, P.J., concurred in the result only.