MARKETOS v AMERICAN EMPLOYERS INSURANCE CO

Docket No. 211775. Submitted December 15, 1999, at Grand Rapids. Decided April 28, 2000, at 9:25 A.M. Leave to appeal sought.

George J. Marketos and Mark Video Enterprises, Inc., brought an action in the Washtenaw Circuit Court against American Employers Insurance Co., seeking payment under an insurance policy covering their business premises on a claim for fire loss denied by the defendant on the ground of alleged arson by Marketos. A jury returned a verdict in favor of the defendant. The court, Thomas Roumell, J., granted the plaintiffs judgment notwithstanding the verdict and, in the alternative, granted a new trial. The Court of Appeals, TAYLOR, P.J., and WEAVER and SMOLENSKI, JJ., in an unpublished opinion per curiam, issued June 29, 1994, reversed the grant of judgment notwithstanding the verdict and the alternative grant of a new trial (Docket Nos. 140985, 143322). The Supreme Court, in lieu of granting leave to appeal, reversed and remanded the matter to the trial court for a new trial. 450 Mich 852 (1995). Following retrial, the jury returned a verdict for the plaintiffs. The court, J. Phillip Jourdan, J., reduced the award by the amount the defendant had paid to discharge a mortgage taken out by the plaintiffs on the insured property, and by the amount of the plaintiffs' deductible under the policy. The court also denied the plaintiffs penalty interest, mediation sanctions, and frivolous-defense sanctions. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court properly reduced the verdict by the amount paid by the defendant to the mortgagee. The payment was made pursuant to a mortgage clause in the policy. The standard mortgage loss-payable clause gives the insurance proceeds to a mortgagee to the extent that they are equal to or less than the mortgage debt and accords priority to insuring the mortgage debt over the insured mortgagor's claim. The insured property owner has no claim to the portion of the insurance proceeds attributable to the unpaid balance of the mortgage, and the owner's claim for damage to the insured property is properly reduced by that amount. When an insurer claims that no liability to the mortgagor exists and the claim of no liability later proves to be false, the insurer has no right to subrogation or assignment of the lender's mortgage. The plain-

tiffs' claim that the defendant was not entitled to the setoff because the defendant did not assert its right as an assignee of the mortgage is without merit.

2. The trial court did not err in refusing to award the plaintiffs penalty interest under MCL 500.2006(4); MSA 24.12006(4). The plaintiffs were not entitled to such interest inasmuch as their claim was reasonably in dispute.

3. The trial court erred in denying mediation sanctions to the plaintiffs. The trial court should not have reduced the jury verdict for the plaintiffs by the mortgage setoff because such an adjustment is not among those authorized by MCR 2.403(O)(3) when determining whether the verdict is more favorable or less favorable than the rejected mediation evaluation. In this case, where the verdict was more than ten percent higher than the mediation evaluation accepted by the plaintiffs and rejected by the defendant, the plaintiffs are entitled to mediation sanctions in an amount to be determined by the trial court on remand.

4. The trial court did not clearly err in finding that the defendant's defense of arson was not frivolous. The trial court therefore did not err in refusing to award to the plaintiffs frivolous-defense sanctions under MCR 2.625(A)(2).

Affirmed in part, reversed in part, and remanded.

1. INSURANCE — FIRE INSURANCE — MORTGAGES — LOSS-PAYABLE CLAUSES.

A standard mortgage clause in a fire insurance policy constitutes a separate and distinct contract between the mortgagee and the insurer for payment on the mortgage; insurance proceeds first go to the mortgagee to the extent they are equal to or less than the mortgage debt, and the balance of the proceeds, if any, then goes to the insured.

2. PRETRIAL PROCEDURE — MEDIATION — SANCTIONS — JURY VERDICTS.

A court deciding whether a jury verdict is more favorable than a mediation evaluation for purposes of awarding mediation sanctions may adjust the verdict only as allowed under MCR 2.403(O)(3).

*Honigman Miller Schwartz and Cohn* (by *I. W. Winsten*) and *Kantner and Associates* (by *Perry M. Kantner* and *Robert W. Roddis*), for the plaintiffs.

*Cozen and O'Connor* (by *Thomas McKay, III*, and *Kathie D. King*) and *Miller, Canfield, Paddock & Stone, PLC* (by *Allyn D. Kantor*), for the defendant.

Before: Fitzgerald, P.J., and Hoekstra and Markey, JJ.

Hoekstra, J. Following an extensive fire in January 1986 at plaintiffs' Ann Arbor facility, plaintiff George Marketos filed a claim for insurance proceeds on his own behalf and on behalf of plaintiff Mark Video Enterprises, Inc. Defendant, plaintiffs' insurer, denied the claim several months after plaintiff Marketos submitted to an examination under oath, and almost one year after the fire, on the basis that the fire was arson and that plaintiff Marketos had either set the fire or was responsible for setting the fire. Plaintiffs sued for the insurance proceeds. After an extended procedural history, with the original trial proceeding in 1990 followed by appeals to this Court and the Michigan Supreme Court,[1] plaintiffs' action was retried in September 1997 and resulted in a judgment for plaintiffs. Before entry of judgment, the trial court made several rulings, which plaintiffs now appeal, including allowing a setoff for proceeds paid to plaintiffs' mortgagee, denying penalty interest, and denying mediation and frivolous-defense sanctions. We affirm in part, reverse in part, and remand.

---

[1] The case was originally tried in July 1990. The jury returned a verdict in favor of defendant, after which the trial court entered a judgment notwithstanding the verdict (JNOV) in favor of plaintiffs and, in the alternative, granted a new trial. This Court reversed the trial court's decision with regard to the JNOV and the alternative grant of a new trial. *Marketos v American Employers Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued June 29, 1994 (Docket Nos. 140985, 143322). The Supreme Court disagreed with this Court's decision in part and reinstated the trial court's alternative grant a of a new trial. *Marketos v American Employers Ins Co*, 450 Mich 852 (1995).

I

A brief history of the events leading up to the lawsuit follows. In late 1982, Marketos negotiated the purchase of NET Enterprises for $100,000 from his former employer, a New York television station. NET Enterprises' primary business was to duplicate television program tapes and distribute them to local stations. Its properties included a duplication facility in Ann Arbor and a small studio/editing facility in Livonia. After acquiring the properties, Marketos changed the name of the company to Mark Video.

At the time Marketos purchased NET Enterprises, it was losing money and owed the Internal Revenue Service (IRS) more than $2 million in back taxes. In spite of this financial predicament, Marketos believed that he could make the company profitable again, and his only risk was the loss of his initial $100,000 investment. When Marketos purchased NET Enterprises' stock, he did not become personally liable for the corporation's debts. Marketos negotiated a long-term payment plan with the IRS, including monthly payments and an understanding that, if Mark Video became profitable, the IRS and Marketos would negotiate for the IRS to receive a percentage of the profits.

Initially after Marketos took over, the business got worse, not better. For example, severe cash-flow problems existed, creditors were not paid on time, and Marketos was forced to personally guarantee a debt to 3M Corporation for video tapes after 3M sued Mark Video on that debt. Eventually, however, Mark Video's financial position improved to the point where it could obtain bank loans. Marketos obtained a loan for approximately $450,000 from First of America in

the form of a mortgage, which was secured by the Ann Arbor property and was personally guaranteed by Marketos.

From 1983 to the time of the fire, Mark Video succeeded in cutting its costs, and it reduced insurance coverage to a minimum because it was basically covering the IRS, to which the largest portion of Mark Video's debts were owed. Mark Video acquired approximately $1 million worth of new equipment, increased its revenues by more than $1 million, and its net losses decreased by approximately $900,000. In August 1985, Mark Video actually enjoyed its first profitable month, and two other profitable months followed before the close of 1985.

On the evening of January 4, 1986, a fire alarm went off in Mark Video's Ann Arbor facility. Despite the efforts of firefighters, the building and most of the equipment therein were destroyed. Marketos filed an insurance claim that defendant denied on the basis that Marketos was an arsonist. Marketos thereafter sued for the insurance proceeds. Defendant subsequently paid First of America the balance of plaintiff's mortgage because of the standard mortgage clause in the insurance contract and it took an assignment of the mortgage.

At trial, firefighters testified that the characteristics of the fire did not indicate arson. Further, the firefighters' efforts to contain the fire were hindered where, as a result of an oversight, the gas and electricity to the building were not turned off until several hours into the fire and where the fire spread beyond the firewall when the firefighters left the south fire door propped open when they evacuated the building after an evacuation alarm sounded.

The deputy fire marshal testified that on the basis of his eyewitness observation of the fire and his investigation of the scene days later, having found no evidence of a low burning fire in the storage area or evidence that accelerants had been used, he determined that the fire was a high fire of undetermined origin. To the contrary, defendant's expert concluded that on the basis of his own investigation of the scene after the fire, the fire was an arson fire.

In making this conclusion, defendant's expert partly based his opinion on the containers he found at the scene, some of which smelled like paint thinner, some of which were uncapped, and some of which were surrounded by flat cardboard boxes in the storage area; twisted newspapers and cases of toilet paper in the vicinity; and spalling on the concrete floor, i.e., the floor had broken up as a result of intense heat. He also determined that the north fire door had been propped open before the fire because a mop handle was wedged under the open door and tape cases were stacked neatly against it. However, Mark Video's maintenance supervisor testified at trial that upon his arrival at the fire approximately fifteen minutes after the alarm sounded, he confirmed that the north fire door was closed. A firefighter testified that he did not see the north fire door, and had it been open, he would have noticed it. Another firefighter and the deputy fire marshal testified that on the basis of the conditions, including the intensity of the smoke and its movement, they believed that the north fire door was closed when firefighters arrived. A maintenance engineer at Mark Video confirmed that approximately one hour into the fire the north fire door was closed. He also testified that

paint, paint thinner, and cleaning supplies, including a mop, were stored in the storage area, and that there had been trouble with the south furnace.[2]

The jury returned a verdict in favor of plaintiffs in the amount of $1,707,709. The trial court adjusted the verdict by $456,073.15 because defendant had paid $455,073.15 to First of America, the insured's mortgagee, and because Mark Video had a $1,000 deductible. The trial court denied plaintiffs penalty interest, mediation sanctions, and frivolous-defense sanctions.

II

A

On appeal, plaintiffs first argue that the trial court erred in granting defendant a $455,073.15 setoff from the verdict. Plaintiffs claim that defendant was not entitled to a setoff of the amount that defendant paid to the mortgagee after the fire and pursuant to the standard mortgage clause for multiple reasons, including that defendant never asserted a setoff defense or counterclaim,[3] such setoff was time-barred, and defendant had extinguished, discharged, or canceled the note that formed the basis for the purported setoff. In essence, plaintiffs assert that defendant was not entitled to a setoff because

---

[2] The deputy fire marshal testified that he wanted to analyze the furnace, but the backhoe that defendant's expert hired ran over the furnace and destroyed it, making analysis impossible.

[3] We note that plaintiffs' argument that defendant is not entitled to a setoff because it failed to plead a setoff or file a counterclaim for the amount already paid is disingenuous. Any defects in the pleadings in this case with regard to a setoff have been rendered nugatory because the matter was decided by the trial court and incorporated into the judgment without prejudice to plaintiffs. See MCR 2.118(C); *Hornack v Young,* 63 Mich App 650; 234 NW2d 746 (1975).

defendant failed to pursue payment from the mortgagor, i.e., plaintiffs, based on the assignment of the mortgage obtained by defendant when defendant paid the mortgagee. Plaintiffs argue that defendant was precluded from pursuing a setoff because it did not act to enforce or protect its interests in the mortgage like a traditional mortgagee is required to do. Plaintiffs contend that the insurance policy language makes clear that when defendant paid First of America, it had two choices: either to pay the mortgage debt and become subrogated to First of America's rights or to purchase the mortgage by paying First of America and taking assignment of the mortgage. According to plaintiffs, defendant chose the second option, became the mortgagee, and was required to take action on the mortgage as a mortgagee. Further, plaintiffs advance several arguments to support their theory that defendant, as a mortgagee, extinguished its rights before the setoff was requested and given. Plaintiffs argue that defendant violated the statute of limitations, MCL 600.5807; MSA 27A.5807, when it did not seek to enforce the mortgage within the applicable time limits. In the alternative, plaintiffs contend that the mortgage debt was satisfied by a quiet title action in 1990 when another party purchased the property or, at the latest, the debt was discharged by defendant following trial but before judgment was entered. None of these arguments need be addressed because they stem from the faulty premise that once defendant took assignment of the mortgage, it was required to act on the mortgage like a traditional mortgagee.

In the present case, the insurance policy that defendant issued to plaintiffs included a standard

mortgage clause.[4] See *Federal Nat'l Mortgage Ass'n v Ohio Casualty Ins Co*, 46 Mich App 587, 588-590; 208 NW2d 573 (1973). A standard mortgage clause consti-

---

[4] The mortgage clause in the present case provides:

Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee) in order of precedence of said mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided, also, that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on d[e]mand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

tutes a separate and distinct contract between the mortgagee and the insurance company for payment on the mortgage. *Cole v Michigan Mut Ins Co,* 116 Mich App 51, 55; 321 NW2d 839 (1982). It is designed to protect a mortgagee in the event that actions of the insured mortgagor void the insurance policy. *Id.* In *Ramon v Farm Bureau Ins Co,* 184 Mich App 54, 66-67; 457 NW2d 90 (1990), we explained:

> The standard mortgage loss-payable clause gives the insurance proceeds to a mortgagee to the extent that they are equal to or less than the mortgage debt and accords priority to insuring the mortgage debt over the insured mortgagor's claim. The insurer's payment of the existing mortgage balance satisfies its obligation to the mortgagee, while having no effect upon the insured's claim. However, *the insured property owner has no claim to the portion of the insurance proceeds attributable to the unpaid balance of the mortgage and his claim for damage to the insured property is properly reduced by that amount.* [Emphasis supplied; citations omitted.]

See also *Brown v Frankenmuth Mut Ins Co,* 187 Mich App 375, 383-384; 468 NW2d 243 (1991). Stated another way, under a standard mortgage clause, payment must be made to the mortgagee to the extent of its interest, and then the balance of the insurance proceeds, if any, can be sought by the mortgagor. *Christopher & John, Inc v Maryland Casualty Co,* 484 F Supp 609, 611 (SD NY, 1980), quoting *Grady v Utica Mut Ins Co,* 69 AD2d 668, 673-674; 419 NYS2d 565 (1979).

Our Supreme Court, in *McAlpine v State Mut Fire Ins Co of Michigan,* 295 Mich 456; 295 NW 224 (1940), addressed the import of the standard mortgage clause where an insurer claimed that the insured

voided the insurance policy. In *McAlpine*, where the insured's barn was destroyed by fire, the insurer eventually admitted liability to the bank under the mortgage clause, paid the sum of $1,485 in satisfaction of the liability, *and* took an assignment of the mortgage in accord with the standard mortgage clause. *Id.* at 458-459. The insurer then commenced foreclosure proceedings against the insured and bid on the property at the foreclosure sale. *Id.* at 459. The insurer claimed that it was not liable to the insured because the insured violated the terms of the policy. The insured filed a complaint requesting, among other things, that the note and mortgage be declared paid, discharged, and canceled and that the assignment of the mortgage be canceled. *Id.*

The standard mortgage clause at issue in *McAlpine*, *supra*, is substantially similar to that at issue in the present case. With regard to that clause, the *McAlpine* Court held:

> The mortgage clause . . . provides for subrogation upon payment to the mortgagee and claim that as to the mortgagor or owner no liability exists. Appellant denied liability to plaintiffs for the loss, claiming that the policy had been suspended. The claim, however, as we have seen, was not based upon legal rights. It was a mere assertion of an invalid claim as the policy was not suspended at the time the loss occurred. Appellant was not entitled to subrogation and assignment of the bank's mortgage. [*Id.* at 461.]

The import of this ruling is clear. When an insurer claims that no liability exists to the mortgagor and the claim of no liability later proves to be false, the insurer has no right to subrogation or assignment of the bank's mortgage. The rights of an insurer to take an assignment of a mortgage or become subrogated

to the rights of a mortgagee under a standard mortgage clause are contingent on whether the insurer is liable to the mortgagor. Thus, as in this case where the arson defense proved to be untrue, defendant had no right to act on the assignment of mortgage and had no subrogation rights.[5]

Applying the law to the present case, it is apparent that plaintiffs were not entitled to claim the portion of insurance proceeds that went to pay First of America, the mortgagee. *Ramon, supra* at 66-67. Rather, they were only entitled to the balance of proceeds. *Id.* Thus, as an insurer, defendant was entitled to a setoff for the amount it paid to the mortgagee when plaintiffs were awarded the total sum under the

---

[5] Other jurisdictions have acknowledged this same interpretation of the standard mortgage clause. See *Commercial Standard Ins Co of Fort Worth, Texas v Hitson*, 73 NM 328, 332; 388 P2d 56 (1963) (Interpreting a standard mortgage clause, the court stated "[a]s we view this language, it clearly states that where the payment has been made to the mortgagee, but the insurance coverage had been voided for some reason, there was present a right in the insurance companies to recover back from the 'mortgagor or owner' "); *MFA Mut Ins Co v Huddleston*, 459 SW2d 104, 106 (Mo App, 1970) ("[W]here the policy is 'void' as to the insured . . . , the Company [insurer] may acquire the mortgage security upon payment to the mortgagee of the entire balance due, which would include the right to foreclose upon a default pursuant to the terms of the mortgage as in the case of any mortgage holder").

See also *Estate of Ensz v Brown Ins Agency, Inc*, 66 Wis 2d 193, 204; 223 NW2d 903 (1974) (The right of an insurer to be subrogated or to take an assignment under a standard mortgage clause is recognized only "where it can be shown that the insurer is not liable under the policy to the mortgagor." The equity involved is that the insurer is permitted to foreclose on a mortgage so that the mortgagor, who has not complied with the terms of his insurance contract, will not receive any benefit); *United Stores of America, Inc v Fireman's Fund Ins Co*, 290 F Supp 61, 64 (ED Mo, 1968) ("The authorities generally agree that on payment by the insurer to a mortgagee he is entitled to subrogation of the mortgagee's rights against the mortgagor. This is true in cases where the insurer is not liable to the mortgagor because of some breach of policy conditions or for some other legal reason where the insurance policy contains the provision for subrogation"), aff'd 420 F2d 337 (CA 8, 1970).

policy. *Id.* This was not a situation where plaintiffs defaulted on the conditions of the policy, such that defendant was entitled to pursue plaintiffs for the amount already paid. Plaintiffs confuse the issue whether defendant is entitled to a setoff and whether defendant is entitled to recoup money from plaintiffs for the amount it paid to plaintiffs' mortgagee.[6]

Under the circumstances of the present case, where defendant was liable to plaintiffs on the policy, the assignment of the mortgage was an unenforceable and invalid instrument. See *id.* Because defendant's claim of no liability failed, its right to recoup from plaintiffs the amount paid to First of America also failed. See, e.g., *McAlpine, supra* at 461. Had the jury found Marketos to be an arsonist, Marketos would have been found to have defaulted on the conditions of the policy and defendant could have pursued plaintiffs, pursuant to the remedies set forth in the standard mortgage clause, to collect the money already paid to the mortgagee.

Moreover, ruling otherwise would allow plaintiffs a double recovery. Plaintiffs already received approximately $455,000 of proceeds through the payment on the mortgage. Thus, plaintiffs were only entitled to claim the excess of the proceeds left over after the mortgagee had been paid. *Ramon, supra* at 66-67; *Brown, supra* at 383-384. As such, the trial court properly reduced the verdict awarding plaintiffs the

---

[6] In the present case, defendant recognized that its assignment on the mortgage would only be valid if it was determined that plaintiffs were responsible for arson and, thus, had breached the terms of the policy. As such, defendant never attempted to foreclose on the mortgage or otherwise act on it where a determination regarding its liability had not been made. After the 1997 trial, but before judgment, defendant recognized that the assignment had no value and it discharged the note.

full amount of the insurance policy proceeds by the amount paid to First of America. This resolution places the parties in the exact situation they would have been had defendant not contested its liability to plaintiffs. In sum, we find no error in the trial court's allowing a setoff from the verdict for the amount defendant paid to the mortgagee pursuant to the standard mortgage clause of plaintiffs' insurance contract.

B

Plaintiffs next argue that the trial court erred in refusing to award them penalty interest under MCL 500.2006(4); MSA 24.12006(4). Plaintiffs contend that they were entitled to penalty interest even if the claim was in reasonable dispute, relying on language in *Yaldo v North Pointe Ins Co*, 457 Mich 341; 578 NW2d 274 (1998). However, in *Arco Industries Corp v AMICO (On Second Remand, On Rehearing)*, 233 Mich App 143, 147; 594 NW2d 74 (1998), this Court found that the language in *Yaldo, supra*, on which plaintiffs rely, was dicta. Thereafter, the *Arco* Court concluded that the penalty interest provisions do not apply if the claim is reasonably in dispute. *Arco, supra* at 148-149.

Here, the trial court refused to award penalty interest because it found that the matter was in "reasonable dispute," noting that another jury had found in favor of defendant at the end of the first trial.[7] As

---

[7] The fact that the trial judge, a previous jury, and a previous panel of this Court found that the arson defense was reasonable supports the conclusion that the claim was in reasonable dispute. See *Arco, supra* at 149 ("The lengthy history of [that] case—including, to date, three visits to this Court and two to the Supreme Court—amply supports" a finding that a claim was reasonably in dispute).

such, plaintiffs were not entitled to penalty interest. *Arco, supra*. Because plaintiffs do not challenge the trial court's finding, with regard to penalty interest, that the claim was reasonably in dispute, we affirm. *Arco, supra* at 147-149. Having concluded that plaintiffs are not entitled to penalty interest, we need not address plaintiffs' arguments regarding the amount of penalty interest.

C

Next, plaintiffs argue that the trial court erred in denying them mediation sanctions. Specifically, plaintiffs argue that the trial court violated MCR 2.403(O) because it should not have deducted the $455,073.15 setoff from the verdict before determining if mediation sanctions were warranted. We agree. Because a trial court's decision to deny mediation sanctions involves a question of law, we review its decision de novo. *Great Lakes Gas Transmission Ltd Partnership v Markel*, 226 Mich App 127, 129; 573 NW2d 61 (1997).

In the present case, plaintiffs accepted the mediation award for $1,500,000 in their favor; defendant rejected it. At trial, the jury returned a verdict of $1,707,709. Instead of comparing the mediation award to the verdict as given, the trial court first adjusted the verdict by subtracting $455,073.15 to account for the amount paid to First of America pursuant to the standard mortgage clause. Thus, no mediation sanctions were awarded because the adjusted verdict was more than ten percent below the mediation evaluation. See MCR 2.403(O).

This Court is called on to determine whether a trial court should compare the jury verdict or the court's final judgment to the mediation award for purposes of deciding if mediation sanctions must be awarded. To decide this issue, we must construe MCR 2.403(O). When construing a court rule, this Court must apply the principles of statutory construction:

> When this Court must construe a court rule, the principles of statutory construction apply. The mission of a court engaged in statutory construction is to interpret and apply the statute in accordance with the intent of the drafter, which, in the first instance, must be determined from the plain meaning of the language used. In the face of unambiguous statutory language, the court has no further role in construing the court rule . . . . [*Mahrle v Danke*, 216 Mich App 343, 348; 549 NW2d 56 (1996) (citation omitted).]

MCR 2.403(O) governs the award of mediation sanctions and provides in relevant part that "[i]f a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the mediation evaluation." MCR 2.403(O)(1). The rule further provides:

> (2) For the purpose of this rule "verdict" includes,
>
> (a) a jury verdict,
>
> (b) a judgment by the court after a nonjury trial,
>
> (c) a judgment entered as a result of a ruling on a motion after rejection of the mediation evaluation.
>
> (3) For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of mediation evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306; MSA 27A.6306. After this adjustment, the verdict

is considered more favorable to a defendant if it is more than 10 percent below the evaluation, and is considered more favorable to the plaintiff if it is more than 10 percent above the evaluation . . . .

We hold that the plain language of MCR 2.403(O) requires the trial court to award mediation sanctions if the jury verdict itself, adjusted only as set forth in MCR 2.403(O)(3), is not more favorable to the rejecting party than the mediation evaluation.[8] See *Frank v William A Kibbe & Associates, Inc*, 208 Mich App 346, 352; 527 NW2d 82 (1995) ("The judge should have considered the amount of the jury verdict, adjusted only as permitted by MCR 2.403(O)(3), when determining if sanctions were required.") As

---

[8] Defendant improperly relies on *Brown, supra*, to support its claim that it is proper to consider posttrial setoffs before determining whether mediation sanctions are appropriate. *Brown* simply does not stand for this proposition. Further, defendant improperly claims that MCR 2.403(O)(2)(c) allows this Court to consider the judgment, as opposed to the jury verdict, when determining if mediation sanctions are appropriate. MCR 2.403(O)(2)(c), which provides that "a judgment entered as a result of a ruling on a motion after rejection of the mediation evaluation," applies to actions that have been summarily decided before the commencement of trial. In *Johnson v State Farm Mut Automobile Ins Co*, 183 Mich App 752, 769; 455 NW2d 420 (1990), this Court clarified:

Had the Supreme Court merely wished to include within the definition of "verdict" those cases where a matter is disposed of by motion after the commencement of trial, it would have said so. Since the Supreme Court chose to use the phrase "a motion filed after mediation" rather than "a motion filed after the commencement of trial," or a similar phrase, we can only conclude that the Court intended to include those cases which are disposed of by motion following mediation but prior to the commencement of trial.

Clearly, MCR 2.403(O)(2)(c) was meant to allow for the imposition of mediation sanctions where a party rejects mediation and later receives a less favorable result on a motion, i.e., a grant of summary disposition. It does not allow for mediation sanctions based on the amount of a judgment that has been adjusted by posttrial motions.

applied to the case at hand, we find that the trial court erred in subtracting the setoff amount before determining if mediation sanctions were warranted. Consequently, we reverse and remand to the trial court to determine the amount of mediation sanctions to which plaintiffs are entitled.

D

Finally, plaintiffs argue that the trial court erred in refusing to award to plaintiffs frivolous-defense sanctions under MCR 2.625(A)(2). This Court will not disturb a trial court's finding that a defense was frivolous unless the finding was clearly erroneous. *Szymanski v Brown*, 221 Mich App 423, 436; 562 NW2d 212 (1997). Although we may have reached a conclusion different from that of the trial court, we cannot say that the trial court's decision not to grant frivolous-defense sanctions was clearly erroneous.

Pursuant to MCR 2.625(A)(2), a trial court shall award costs pursuant to MCL 600.2591; MSA 27A.2591 if the court finds that an action or defense was frivolous. Under MCL 600.2591; MSA 27A.2591, an action or defense is frivolous when one of the following conditions is met:

> (i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (iii) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a); MSA 27A.2591(3)(a).]

In the present case, plaintiffs assert that the defense of arson was frivolous under both the first and third conditions because defendant could not establish the elements of arson. Specifically, plaintiffs claim that defendant had no reasonable basis to believe its arson defense was true and its legal position was devoid of merit. Plaintiffs argue that there was insufficient evidence of motive and that there was no evidence that the fire was arson or that defendant either arranged for the setting of the fire or set the fire himself.

When the defense of arson is raised, the defendant carries the burden of proving that the plaintiff set the fire or caused it to be set, which may be accomplished by circumstantial evidence. *United Gratiot Furniture Mart, Inc v Michigan Basic Property Ins Ass'n*, 159 Mich App 94, 104; 406 NW2d 239 (1987); *Johnson v Auto-Owners Ins Group*, 202 Mich App 525, 527; 509 NW2d 538 (1993). Motive and opportunity are not mandatory elements of circumstantial proof, but are merely two factors to be considered. *Johnson, supra* at 527-528.

Here, the trial court denied plaintiffs' motion for frivolous-defense sanctions, stating that arson was a reasonable defense and that the jury verdict could have gone either way. The record reveals that defendant presented at trial circumstantial evidence that the fire was incendiary in nature and that the financial situation of Marketos' company was in terrible shape and despite improvements, significant debt remained. Although review of the record shows that such evidence was weak in comparison to plaintiffs' evidence,

we find no clear error in the trial court's denial of frivolous-defense sanctions.[9]

Affirmed in part, reversed in part, and remanded for action consistent with this opinion. We do not retain jurisdiction.

---

[9] Although we do not rely on the procedural history of this case, see n 1, *supra*, we note that the history supports the trial court's determination that the defense of arson was reasonable and not frivolous.